70830. BRIDGES v. WINN-DIXIE ATLANTA, INC. et al.
(335 SE2d 445)

DEEN, Presiding Judge.

Appellant Sue Bridges was employed as a part-time cashier in a grocery store owned and operated by appellee Winn-Dixie Atlanta, Inc. (Winn-Dixie). This particular store sustained considerable losses and inventory shortages over a twenty-month period, and a security investigation was undertaken in an attempt to remedy the situation. Company officials announced at a meeting attended by all store employees that the investigation was under way; employees were urged to reveal to company officials any information they might have regarding the shortages and were also informed that they would be expected to submit to polygraph examinations.

Two days after the meeting, when Ms. Bridges arrived at the hour scheduled for her test, according to her deposition testimony she informed Winn-Dixie's safety and security manager, a Mr. McLemore, and the polygraph examiner that some six months previously her physician had told her that she had multiple sclerosis. According to her testimony, she inquired of McLemore and the examiner as to whether the condition or the medication she was taking for it might distort or otherwise invalidate the results of the examination. They

replied in the negative, and Ms. Bridges executed the release forms (one paragraph of which stated that she knew of no illness or other physical condition which would interfere with the test) and underwent the examination. At the conclusion of the test the examiner informed McLemore that Ms. Bridges' response to a question asking whether she had given unauthorized discounts had indicated deception. McLemore then told Ms. Bridges that there was a "problem" and questioned her on this subject. She insisted that she had given no unauthorized discounts and done nothing else that would evoke a "deceptive" answer; and, in response to specific questions by McLemore, denied that she had done anything that would provoke a false accusation by any of the store's employees. McLemore then informed her that a fellow cashier had reported that she had seen Bridges giving unauthorized discounts. During this conversation, according to her own deposition testimony as well as that of appellees, Ms. Bridges grew angry, upset, and "hysterical" and used strong language to McLemore. She testified by affidavit that during the encounter McLemore was "standing over" her and had called her a "damn liar"; this testimony was disputed by McLemore and the polygraph examiner, who had heard the encounter through an open door. The conversation was terminated when Ms. Bridges left the examination site and "clocked out" of the store.

Ms. Bridges was asked to take a second polygraph examination, this one to be administered by a different firm. She agreed to being retested but refused to sign the release form; she was therefore not permitted to take the examination. She was subsequently discharged for being "uncooperative" in the security investigation. Several other employees were discharged by Winn-Dixie for acts of dishonesty uncovered during the investigation.

Appellant testified that her physician had told her not to get "upset," as doing so would aggravate her condition. She acknowledged, however, that she had not called her doctor for advice as to whether to take the examination and had not consulted him or sought treatment after the events of either the day when she had actually taken the examination or the day when she was scheduled to take a second examination. She alleged, however, that she had experienced certain physical symptoms (trembling, temporary partial paralysis) subsequent to these events, and that the conduct of appellee's agents towards her constituted intentional infliction of emotional distress and was the proximate cause of her symptoms.

After filing a response to appellant's complaint and engaging in discovery, appellee moved for summary judgment. The trial court granted the motion, finding as a matter of law that appellee's conduct did not rise to the level of outrageousness or egregiousness necessary to sustain an allegation of intentional infliction of emotional distress.

On appeal, Ms. Bridges assigns error to this judgment. *Held*:

1. Georgia law recognizes the tort of intentional infliction of emotional distress. *Thomas v. Ronald A. Edwards Constr. Co.*, 163 Ga. App. 202 (293 SE2d 383) (1982); *Dunn v. Western Union Tel. Co.*, 2 Ga. App. 845 (59 SE 189) (1907). The burden which the plaintiff must meet in order to prevail in this cause of action is a stringent one, however. "In order to sustain a cause of action in this state for the tort of intentional infliction of emotional distress, a plaintiff must show that 'defendant's actions were so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff.'" *Sossenko v. Michelin Tire Corp.*, 172 Ga. App. 771, 772 (324 SE2d 593) (1984); *Georgia Power Co. v. Johnson*, 155 Ga. App. 862, 863 (274 SE2d 17) (1980). In *Sossenko* plaintiff complained of statements and advice by members of his employer's personnel department regarding his job performance and the possible consequences of his failure to comply with requirements or decisions of his superiors. In that case the court, at 772 et seq., cited cases in which the statements or threats on the basis of which the courts had awarded judgment to the plaintiff "were outrageous and egregious, such as where a defendant terrorized a frightened plaintiff at gunpoint in an attempt to collect a bill, . . . and where a defendant physically intimidated frightened mourners as they attempted to bury a family member." See *American Fin. & Loan Corp. v. Coots*, 105 Ga. App. 849 (125 SE2d 689) (1962); *Stephens v. Waits*, 53 Ga. App. 44 (184 SE 781) (1935).

The court held in *Sossenko*, at 773, that "considered individually or collectively, the statements made to appellant could not have foreseeably resulted in the mental distress of which appellant complains because they do not rise to the requisite level of outrageousness and egregiousness." In *Ga. Power Co. v. Johnson*, supra, where a contractor added to his itemized bill $5,000 for the owner's wife's interference on the job, and swore out a dispossessory warrant when the owners refused to close until certain disputed items had been settled, the court held, at 863, that neither of these acts could "reasonably be characterized as humiliating, insulting, or terrifying" and did not amount to "the kind of egregious conduct necessary to state a claim for the intentional infliction of emotional distress." Cf. *Delta Fin. Co. v. Ganakas*, 93 Ga. App. 297 (91 SE2d 383) (1956) (eleven-year-old girl threatened with jail if she did not let men into house to repossess her mother's television); *Dunn v. Western Union Tel. Co.*, supra (operator spoke abusively to plaintiff and refused to allow him to notify brother of woman's death).

The Restatement (Second) of Torts, Ch. 2, Emotional Distress, § 46 (1) (1965), provides as follows: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress . . ."

In *Womack v. Eldridge*, a case decided by another jurisdiction (215 Va. 338) [210 SE2d 145, 147] (1974), the court observed that "[m]ost of the courts which have been presented with the question in recent years have held that there may be a recovery against one who by his extreme and outrageous conduct intentionally or recklessly causes another severe emotional distress." In *Womack* the court formulated as follows the four elements of the tort contemplated by the Restatement, supra, all four of which must be present in order for an action to lie: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; (4) The emotional distress must be severe." See also *Harris v. Jones*, 281 Md. 560 (380 A2d 611) 86 ALR3d 441.

Comment f, § 46 (1) of the Restatement (Second) states that the extreme and outrageous character of the conduct "may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know." Moreover, the existence of a special relationship in which one person has control over another, as in the employer-employee relationship, may produce a character of outrageousness that otherwise might not exist. Restatement (Second), § 46 (1), comment e. The Restatement issues a caveat, however, in § 46 (1), comment f: "It must be emphasized . . . that major outrage in the language or conduct complained of is essential to the tort."

The severity of the emotional distress allegedly produced by the conduct is also a factor in determining liability for this tort. The Restatement (Second), § 46 (1), comment j, states as follows: "Emotional distress . . . includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that liability arises . . . The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it . . . The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor has knowledge . . . It is for the court to determine whether on the evidence severe emotional distress can be found . . ."

In its order granting summary judgment to appellee, the trial court in the instant case cited *Harris v. Jones*, supra, and the Restatement (Second) of Torts, supra, and analyzed the facts of the case in the light of the four *Womack* elements cited, supra. The court concluded that, although "[i]n plaintiff's view she was wronged[,] . . . the

wrong perceived by her is not actionable because it simply falls short of an emotional disturbance 'inflicted by intentional actions wholly lacking in social utility.' " The court observed that "[t]he testimony merely reveals a personal confrontation between disagreeing parties" and that "[t]here has been no showing of severe emotional distress suffered . . . beyond . . . testimony of conditions typical of multiple sclerosis," and concluded that the plaintiff's case "does not come within the strict legal parameters properly mandated" in cases of this sort.

Our scrutiny of the record indicates that the trial court did not err in determining that the wrong complained of by appellant was not actionable. The deposition testimony — including that of appellant herself — shows that her language and tone of voice were at least as bellicose and lacking in delicacy as McLemore's; the symptoms of which she complains are those commonly associated with multiple sclerosis; she acknowledges that she did not consult her physician immediately after the incidents complained of and therefore did not establish the requisite causal connection; and the duration of the allegedly distressful incidents was relatively brief. We cannot say that being asked to take a polygraph examination in connection with an investigation into a theft would not be upsetting to a normal person, and more so perhaps to persons whose emotional threshold had been lowered by a condition such as multiple sclerosis; nor can we say that McLemore and the examiner might not optimally have dealt more tactfully with appellant or exhibited more sensitivity towards her physical condition. Nevertheless, on the facts of the instant case, we do not find that the elements of the tort were present, and we therefore cannot say that the trial court erred in finding that Ms. Bridges' allegations and evidence did not rise to the level required for an actionable claim for intentional infliction of emotional distress.

2. Because we have held, supra, that appellant failed to make out a *prima facie* case of intentional infliction of emotional distress, it follows that appellee, as defendant/movant, met his statutory burden of piercing the pleadings and affirmatively negating at least one of the essential elements of plaintiff/respondent's case. OCGA § 9-11-56; *Fort v. Boone*, 166 Ga. App. 290 (304 SE2d 465) (1983). The affidavit filed by appellant in opposition to appellee's motion merely reiterates the allegations of the complaint; it therefore fails to meet the burden imposed by OCGA § 9-11-56 (e). The trial court correctly granted appellee's motion for summary judgment.

*Judgment affirmed. Pope and Beasley, JJ., concur.*

DECIDED SEPTEMBER 10, 1985 —
REHEARING DENIED SEPTEMBER 26, 1985.

*Lonzy F. Edwards*, for appellant.
*John W. Collier, Alan F. Herman*, for appellees.