**Debra L. SHEPHERD, Plaintiff,**

v.

**ISS INTERNATIONAL SERVICE SYSTEM, INC., Defendant.**

Civ. A. No. 1:92–CV–2472–FMH.

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 5, 1994.

Charles Jefferson Biederman, Coary Richard Kessler, Atlanta, GA, for plaintiff.

David L. Gordon, Atlanta, GA, for defendant.

## ORDER

HULL, District Judge.

This case is before the Court on the Magistrate Judge's Report and Recommendation [47–1] denying Defendant's Motion for Summary Judgment [33–1], Defendant's Objections to the Report and Recommendation [49–1], and Plaintiff's Motion for Leave to File Supplemental Brief [60–1] in Response to Defendant's Motion for Summary Judgment.

Defendant does not oppose Plaintiff's Motion for Leave to File a Supplemental Brief, therefore the Court grants Plaintiff's Motion for Leave to File a Supplemental Brief [60–1].

As to Defendant's Motion for Summary Judgment, the Court has performed a careful *de novo* review of the record and finds as follows.

### I. *Factual Background*

Defendant ISS provides cleaning and environmental services to its clients and specializes in cleaning large office buildings. On May 30, 1989, Defendant ISS hired Plaintiff as Airport Branch Manager. Plaintiff's duties included managing the janitorial services provided to the Airport and making sure the Airport was pleased with the services ISS provided. There is a dispute as to Plaintiff's performance while Airport Branch Manager. Defendant claims that Samuel Cobbs, Executive Director of the Atlanta Airlines Terminal Corporation, asked to have Plaintiff removed from her position as Airport Branch Manager. Plaintiff claims that Samuel Cobbs testified that he never requested Plaintiff's removal.

Plaintiff took a pregnancy leave from April to August of 1990. When Plaintiff returned from pregnancy leave, Defendant ISS did not return Plaintiff to her job at the Airport, but instead created a job for Plaintiff as Group Manager of Support Services for ISS's South/West Group. This job entailed, *inter alia,* resolving account problems and complaints between customers and ISS personnel. Plaintiff spent some of her time dealing directly with customers, and the rest of the time working with the ISS crews.

In 1991, ISS began experiencing financial problems due to a drop in sales. Around June of 1991, Gary Wallace became President of the South/West Group and decided to downsize the South/West Group staff. Mr. Wallace reduced his administrative staff from 17 to 5 employees. Mr. Wallace eliminated Plaintiff's position and attempted to find Plaintiff a job with another division president. Mr. Wallace was unable to find a position for Plaintiff in another division. Mr. Wallace asked Mr. Laird, the newly appointed President of the Atlanta Division, to find a place for Plaintiff in his division. Mr. Laird created the job of Support Services Manager for Plaintiff and on July 8, 1991, Plaintiff began working in the Atlanta Division for Mr. Laird.

On August 27, 1991, Plaintiff states that she told Mr. Laird that she was pregnant. Mr. Laird stated that he thought Plaintiff told him in early September of her pregnancy. Mr. Laird claims that he had decided already to eliminate Plaintiff's position before he learned of her pregnancy. However, Plaintiff claims that on September 3, 1991, she asked Mr. Laird if her position was included in the 1992 budget, and Laird told her that it was. Plaintiff claims that Mr. Laird's attitude changed toward her after she told him that she was pregnant. Plaintiff alleges that she was excluded from meetings, that she was not allowed to work on customer accounts, and that she was refused equip-

ment, office space, a car and a phone line she had been promised.

On December 6, 1991, Plaintiff's position was eliminated and Plaintiff was laid off. Plaintiff was six months pregnant at the time she was laid off.

Between August, 1991, and April 9, 1992, Defendant ISS terminated six other employees from the Atlanta Division administrative staff. Three of these employees were men, and three were women. Plaintiff was the only manager who was laid off.

Defendant ISS has a lay off and recall policy which states that laid-off employees have a right of recall to jobs for which they are qualified for six months following their lay-off. Mr. Laird stated that he was not aware of the recall policy at the time, and therefore, did not create a recall list for laid-off employees in his division. Mr. Laird did not recall any of the terminated employees in the Atlanta division. During the six months following Plaintiff's lay off, Mr. Laird filled two newly created positions in his division, but he did not consider Plaintiff for either one.

Throughout most of 1992, Plaintiff suffered from depression due to her lay-off. Plaintiff sought therapy for her depression, but discontinued the therapy in 1992 because she could no longer afford it. Plaintiff continues to take a prescription anti-depressant to date.

On October 19, 1992, Plaintiff filed a Complaint pursuant to the Civil Rights Act of 1991, as amended 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981a alleging that Plaintiff was subjected to sexually discriminatory terms and conditions of employment and eventually fired because of her sex and because she was pregnant. Plaintiff also alleged a state law claim for intentional infliction of emotional distress pursuant to 28 U.S.C. § 1332.

On December 24, 1991, Plaintiff fled a charge of discrimination with the EEOC. On April 6, 1993, Plaintiff filed an Amended Complaint alleging retaliation because Defendant refused to re-hire Plaintiff after Plaintiff filed an EEOC charge.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Rule 56(c), Fed.R.Civ.P., defines the standard for summary judgment: Courts should grant summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The general rule of summary judgment in the Eleventh Circuit states that the moving party must show the court that no genuine issue of material fact should be decided at trial. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir.1991). "[U]nless the movant for summary judgment meets its burden under Rule 56, the obligation of the opposing party does not arise even if no opposing evidentiary material is presented by the party opposing the motion." *Id.*

While all evidence and factual inferences are to be viewed in a light most favorable to the nonmoving party, *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1529 (11th Cir.1987); *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id.* at 250, 106 S.Ct. at 2511. Similarly, a fact is not material unless it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Id.* at 248, 106 S.Ct. at 2510.

Where neither party can prove either the affirmative or the negative of an essential element of a claim, the movant meets its burden on summary judgment by showing that the opposing party will not be able to meet its burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In *Celotex,* the Supreme Court interpreted Rule 56(c) to require the moving party to demon-

strate that the nonmoving party lacks evidence to support an essential element of its claim. Thus, the movant's burden is "discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

In either situation, only when the movant meets this burden, does the burden shift to the opposing party, who must then present evidence to establish the existence of a material issue of fact. *Id.* After the movant discharges its burden, the nonmoving party must go beyond the pleadings and submit evidence in the form of affidavits, depositions, admissions and the like, to demonstrate that a genuine issue of material fact does exist. *Id.*

## B. *APPLICABLE FEDERAL LAW*

Title VII makes it unlawful for an employer to discharge or otherwise discriminate against an employee because of the employee's sex. 42 U.S.C. § 2000e–2.

 Intentional discrimination can be proved by either direct, circumstantial or statistical evidence. *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989); *Buckley v. Hospital Corp. of America, Inc.,* 758 F.2d 1525, 1529 (11th Cir.1985). Direct evidence is that evidence which, if believed, "establishes discriminatory intent without inference or presumption." *Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1226 (11th Cir. 1993). Only the most blatant discriminatory remarks constitute direct evidence. *Clark,* 990 F.2d at 1226; *see also Carter,* 870 F.2d at 581–82. Evidence which only *"suggests* discrimination, leaving the trier of fact to *infer* discrimination based on the evidence" is, by definition, circumstantial. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081–82 (11th Cir.1990).

 The United States Supreme Court recently clarified the proper allocations of the burden of proof and the burden of production for evaluating claims of intentional discrimination based on circumstantial evidence. In *St. Mary's Honor Ctr. v. Hicks,* — U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the Court explained that its decision in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), prescribed the following approach for courts to follow in addressing the merits of a discrimination claim. If the plaintiff establishes a *prima facie* case, it creates a presumption that the defendant unlawfully discriminated against the plaintiff. *Hicks,* — U.S. at ——, 113 S.Ct. at 2747 (citing *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981)). The presumption places upon the defendant the burden of producing an explanation to rebut the *prima facie* case. *Id.* Although the burden of production shifts to the defendant upon the establishment of a *prima facie* case, the ultimate burden of persuasion—that the defendant intentionally discriminated against the plaintiff—never leaves the plaintiff. *Id.* If the defendant is able to produce evidence that the adverse actions were taken for "legitimate, nondiscriminatory reasons," the *prima facie* case is rebutted, and the plaintiff carries the full burden at trial of persuading the trier of fact not only that each of the defendant's proffered explanations is pretextual, but that the defendant intended to discriminate against the plaintiff. *Id.,* — U.S. at ——, 113 S.Ct. at 2749. ("[If] the defendant has succeeded in carrying its burden of production, the *McDonnell Douglas* framework—with its presumption and burdens—is no longer relevant.").

 If the defendant is able to meet its burden of production, "the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven 'that the defendant intentionally discriminated against [him]' ..." *Hicks,* — U.S. at ——, 113 S.Ct. at 2749. "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination." *Id.* However, in contrast to some courts' previous interpretations, rejection of the defendant's proffered reasons does not alone com-

pel judgment for the plaintiff because the burden of persuasion rests always with the plaintiff. *Id.*

On a motion for summary judgment, the shifting burdens accompanying such a motion are grafted onto the shifting burdens of the *McDonnell Douglas/Burdine/Hicks* analysis. The Court will discuss below the resulting burdens of proof and production.

## C. APPLICATION

### 1. Plaintiff's Prima Facie Case

■ Plaintiff alleges that there is direct evidence of discrimination against her by Mr. Laird. Plaintiff contends that Mr. Laird refused Operations Manager Herb White's request that Plaintiff be allowed to visit some of the smaller customers. Laird told White that White could use whomever he wished for the job, but not the Plaintiff. Laird testified in his deposition: "I didn't think it was appropriate at the time. I didn't think Debbie should be seeing our clients." Laird Deposition pp. 115–117.

■ Plaintiff also contends that she has met the criteria for establishing a *prima facie* case under the *McDonnell Douglas* test. In cases based on circumstantial evidence, the plaintiff makes out a *prima facie* case for discrimination if she shows: (1) that she belongs to a protected class; (2) that she applied and was qualified for a job for which the employer was seeking applicants; (3) that despite her qualifications, she was rejected; and, (4) that after her rejection the position remained open and the employer continued to seek applicants of similar qualifications. *Earley,* 907 F.2d at 1082 (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824).

■ The Eleventh Circuit has adopted a variant on this test for addressing reduction-in-force cases based on circumstantial evidence of discrimination. *Id.* In these cases, a plaintiff can establish a *prima facie* case by showing that: (1) she was in a protected group and was adversely affected by an employment decision; (2) she applied and was qualified for her current position or to assume another position at the time of dis-

charge or demotion; and, (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue. *Id.* [citing *Barnes v. Southwest Forest Industries, Inc.,* 814 F.2d 607, 609 (11th Cir.1987) ]. The last prong of the *prima facie* case changes for reduction in force cases in that the court does not require the plaintiff to prove that she was replaced by a person not in the protected group. The reason for this being, that in reduction in force cases, the employer rarely replaces the discharged employee. *Mauter v. Hardy Corp.,* 825 F.2d 1554, 1557 (11th Cir.1987). Instead, Plaintiff must submit evidence from which a fact finder could infer that defendant intended to discriminate when making its decision to terminate the employee.

Defendant contends that Plaintiff cannot establish the second and third elements of her *prima facie* case. However, Laird admits that Plaintiff was qualified for her job and Plaintiff has introduced evidence sufficient to create a question of fact as to whether Laird decided to eliminate Plaintiff's position only after she informed him she was pregnant. According to Plaintiff, when Plaintiff questioned him in early September, Laird stated that Plaintiff's position had not been eliminated from the 1992 budget.

The Court finds that Plaintiff has shown: (1) she was in a protected group and suffered an adverse employment decision, (2) she was qualified for her position or to assume another position at the time she was laid off, and (3) evidence by which a fact finder might conclude that she was discriminated against on the basis of her pregnancy. Therefore, Plaintiff has established her *prima facie* case for the purposes of Defendant's summary judgment motion.

### 2. Defendant's Non–Discriminatory Reasons for Termination

Once the plaintiff makes out a *prima facie* case of discrimination, this creates a presumption that the defendant discriminated in a job related decision based upon the plaintiff's sex. The burden of production now shifts to the defendant to articulate non-discriminatory reasons for the termination. *St. Mary's Honor Center v. Hicks,* —— U.S.

——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (citing *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–256, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981)).

Defendant claims that Plaintiff was terminated because her job was eliminated due to the necessity of cutting costs. Defendant claims that Plaintiff did not perform well in situations that involved customer contact or supervision of employees and therefore, there was no other position available for which Defendant was qualified.

### 3. *Plaintiff's Claim of Pretext*

■ Plaintiff must now introduce evidence creating an issue of fact as to whether the proffered non-discriminatory reasons are pretextual. In *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 921 (11th Cir.1993), the Eleventh Circuit recently set out the plaintiff's burden at this stage under the *McDonnell Douglas* analysis:

> ... In order to establish pretext, the plaintiff is not required to introduce evidence beyond that already offered to establish the *prima facie* case. *Miller [Fairchild Industries, Inc.],* 797 F.2d [727] at 732 [ (9th Cir.1986) ] (citations omitted). Evidence already introduced to establish "the *prima facie* case may be considered, and [i]ndeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation" and establish pretext. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256 n. 10, 101 S.Ct. 1089, 1095 n. 10, 67 L.Ed.2d 207 (1981)....
>
> ....

The burden to avoid summary judgment is not to show by a preponderance of the evidence that the reasons stated were pretext. Rather, plaintiff's burden at summary judgment is met by introducing evidence that could form the basis for a finding of facts, which when taken in the light most favorable to the non-moving party, could allow a jury to find by a preponderance of the evidence that the plaintiff has established pretext. Issues of fact and sufficiency of evidence are properly reserved for the jury. The only issue to be considered by the judge at summary judgment is whether the plaintiff's evidence has placed material facts at issue....

*Hairston,* 9 F.3d at 921.

Further, and most importantly, "[t]he court must avoid weighing conflicting evidence or making credibility determinations." *Hairston,* 9 F.3d at 919. "Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*

■ The Court has discussed already Plaintiff's evidence in support of her *prima facie* case. To show pretext, Plaintiff submits additional evidence that she was excluded from meetings, denied a company car and long distance telephone line, given an inferior office and equipment, and denied customer contact. Plaintiff contends that Mr. Laird's only reason for refusing Mr. White's request to allow Plaintiff to work with some of the smaller client accounts was so Plaintiff would not be able to demonstrate any capabilities which would make it difficult for Laird to justify Plaintiff's pending elimination.

The Court finds that Plaintiff has introduced evidence sufficient to demonstrate an issue of fact as to whether Defendant's articulated non-discriminatory reasons are pretextual. Therefore, for the reasons discussed above, the Court DENIES Defendant's Motion for Summary Judgment as to Plaintiff's Title VII claim of sex discrimination.

### C. *Intentional Infliction of Emotional Distress Claim*

■ Georgia law recognizes the tort of intentional infliction of emotional distress. *Bridges v. Winn–Dixie Atlanta, Inc.,* 176 Ga.App. 227, 229, 335 S.E.2d 445 (1985). However, plaintiff's burden is a stringent one: "[T]o sustain a cause of action in this state for the tort of intentional infliction of emotional distress, a plaintiff must show that 'defendant's actions were so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff.' " *Id.* (citation omitted) (internal punctuation omitted). Defendant's conduct must be extreme and outrageous. *Id.* Plaintiff's emotional distress also

must be extreme and can include "highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." *Id.* (citing Restatement (Second) of Torts § 46 (1965)). The law will intervene only where "the distress inflicted is so severe that no reasonable man could be expected to endure it." *Id.*

Whether a claim rises to the level of outrageousness necessary to sustain a claim for the intentional infliction of emotional distress is a matter of law. *Yarbray v. Southern Bell Telephone & Telegraph Company,* 261 Ga. 703, 706, 409 S.E.2d 835 (1991) (quoting *Gordon v. Frost,* 193 Ga.App. 517, 521, 388 S.E.2d 362 (1989). "Once the evidence shows that reasonable persons might find the conduct extreme and outrageous and suffer the resulting severe emotional distress, the jury must then make its own determination." *Id.*

Plaintiff alleges that she has suffered severe emotional distress to the extent that her marriage is all but ruined, she has needed intensive psychological counseling, and must take anti-depressant medication. Defendant contends, however, that Plaintiff has failed to allege any conduct which rises to the level of "extreme and outrageous" under Georgia law.

Georgia courts have held that conduct may rise to the level of extreme and outrageous if the actor knows that the other party may be particularly susceptible to emotional distress due to some physical or mental condition. *Gordon v. Frost,* 193 Ga.App. 517, 521, 388 S.E.2d 362 (1989). Also, if there is a special relationship in which the actor is in a position of control over the other party, there may be an element of outrageousness that otherwise would not exist. *Id.* at 521–22, 388 S.E.2d 362.

In *Yarbray,* the Georgia Supreme Court reversed the trial court and the Georgia Court of Appeals in their granting and affirming of summary judgment to defendant on plaintiff's intentional infliction of emotional distress claims. In that case, the plaintiff had testified in another employee's suit against the company, describing what the plaintiff perceived as discrimination. The plaintiff claimed that soon after she testified, the company retaliated by transferring her to another position "where she was underused, undervalued and abused by her supervisor." *Yarbray,* 261 Ga. at 704, 409 S.E.2d 835. The Georgia Supreme Court held that this claim, if proved, would meet the threshold for extreme and outrageous conduct, and therefore, a jury issue was presented. *Id.* at 706, 409 S.E.2d 835.

In the instant case, Plaintiff was pregnant, and therefore, arguably, in a particularly susceptible emotional and physical condition. Also, Mr. Laird occupied a position of control over Plaintiff. Both of these factors, together with proof of Plaintiff's claim that Defendant intentionally eliminated her position, subjecting her to discriminatory treatment and inferior working conditions, isolating her, closing her out of meetings, plus the alleged severe emotional distress caused to Plaintiff, may give rise to an issue of fact as to Plaintiff's claim of intentional infliction of emotional distress. At this juncture, the Court finds only that Defendant has not yet carried its burden of establishing that Defendant is entitled to judgment as a matter of law. This finding does not preclude a motion at trial for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure where the burdens may be different on this state law claim. Therefore, the Court DENIES Defendant's Motion for Summary Judgment as to Plaintiff's claim of intentional infliction of emotional distress.

## V. *Retaliatory Discharge Claim*

Plaintiff also claims that she was not considered for recall after being laid off because of the discrimination charges she filed against Defendant with the EEOC. Plaintiff filed her charge of discrimination with the EEOC on December 24, 1991. Plaintiff was laid off on December 6, 1991 with a six month right of recall. During the six months following Plaintiff's lay off, there were two positions created in Mr. Laird's Atlanta Division.

In order to make out a claim under 42 U.S.C. § 2000e–3(a), a plaintiff need not prove the underlying claim of dis-

crimination. *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1494 (11th Cir.1989). The procedure for analyzing a claim for retaliatory discharge is similar to the analysis discussed above in the discriminatory discharge claim. The plaintiff must first establish a *prima facie* case. If the plaintiff establishes her *prima facie* case, the burden of production shifts to the employer to articulate a legitimate non-discriminatory reason for the discharge. Once the employer carries this burden, the employee must then demonstrate that the employer's reason is pretextual. *Id.* at 1494–95. To establish a *prima facie* case for retaliatory discharge, the plaintiff must show: (1) she engaged in protected opposition to Title VII discrimination; (2) she was terminated subsequent to this opposition; and (3) there was a causal link between the protected opposition and the termination. *Id.*

 Defendant contends that Plaintiff cannot establish the third element of her *prima facie* case; namely, the causal link between her filing of the EEOC charge and Defendant's failure to rehire her. Defendant states that Plaintiff admits she never applied for any open positions with Defendant or asked Defendant to consider her for any positions which might become available.

 Further, Defendant contends that even if Plaintiff can prove a *prima facie* case, Defendant has articulated legitimate non-discriminatory reasons for not re-hiring her. The two positions which were filled during the six months subsequent to Plaintiff's lay-off were a contract services manager position and a quality control position. Defendant states that Mr. Laird hired Sarah Tauber for the contract services manager position because of her ten years experience in property management. Mr. Laird chose Ms. McConnell for the quality control position because of her experience prior to coming with ISS and her eight years experience after coming to work for ISS in working with customers. Defendant states that Plaintiff would not even have been considered for these jobs because of her unsuccessful experience at the airport.

The Court finds that Plaintiff has not established a *prima facie* case of retaliation.

*See* 42 U.S.C. § 2000e–3(a); *Simmons v. Camden County Bd. of Educ.,* 757 F.2d 1187, 1189 (11th Cir.1985). Plaintiff has not established a causal link between her filing of the EEOC charge and Defendant's not re-hiring her for either of the positions which were created in the six months subsequent to Plaintiff's termination. Plaintiff states that the only significant event which occurred during that six month period was the filing of Plaintiff's discrimination charge with the EEOC. However, this does not, in and of itself, establish any link to Defendant's failure to re-hire Plaintiff. Plaintiff admits that she did not apply for any open positions or ask Mr. Laird or anyone else to consider her for any positions. Also, Mr. Laird was unaware of the recall policy and did not even have a re-call list. None of the other terminated employees was ever re-called. Further, even if Plaintiff were able to establish her *prima facie* case, Plaintiff has introduced no evidence to show that Defendant's articulated non-discriminatory reasons are pretext. Plaintiff has not shown that she was as qualified or more qualified than the people chosen to fill those positions. Indeed, Defendant has shown that the employees hired for the new positions had far more experience in these positions than Plaintiff. Therefore, the Court finds that Defendant has shown that there is no genuine issue of material fact and the Court GRANTS summary judgment to Defendant on Plaintiff's claim of retaliatory discharge.

*Conclusion*

For the reasons discussed above, the Court GRANTS Plaintiff's Motion for Leave to File Supplemental Brief [60–1], ADOPTS the Magistrate Judge's Report and Recommendation [47–1] insofar as it DENIES Defendant's Motion for Summary Judgment [33–1] on Plaintiff's Title VII claim of sex discrimination and Plaintiff's claim of intentional infliction of emotional distress, but declines to ADOPT the Magistrate Judge's Report and Recommendation insofar as it denies Defendant's Motion for Summary Judgment on Plaintiff's claim of retaliatory discharge. The Court hereby GRANTS Defendant's Mo-

**1560**

tion for Summary Judgment as to Plaintiff's claim of retaliatory discharge.

Further, the Court ORDERS the parties to file a consolidated Pretrial Order with the Magistrate Judge in the form required by Local Rule 235–4 on or before January 5, 1995.

IT IS HEREBY ORDERED.