**Deborah ALLEN, Plaintiff,**

v.

**COMMERCIAL PEST CONTROL, INC., Defendant.**

**No. 7:98–CV–20 (WDO).**

United States District Court, M.D. Georgia, Valdosta Division.

Dec. 21, 1999.

Maurice L. King, Jr., Albany, GA, for Deborah Allen, plaintiff.

Gary Lewis Moser, Valdosta, GA, for Commercial Pest Control, Inc., defendant.

## ORDER

OWENS, District Judge.

Before the Court is defendant Commercial Pest Control, Inc.'s Motion for Summary Judgment [Tab # 34]. Having carefully considered the motion, the related caselaw and statutes, and the file as a whole, the Court enters the following order.

### I. Facts

Plaintiff began her employment with Commercial Pest Control, Inc. (hereinafter referred to as CPC or defendant) on October 11, 1993, as a bookkeeper. Wayne and Martha Cowart are co-owners of CPC.

While employed at CPC, during or around June of 1994, plaintiff became pregnant. Plaintiff maintained her employment with CPC until January 13, 1995, when she took maternity leave. Plaintiff admits that at the time she left on maternity leave she was not told that she was fired by any representative of the defendant corporation. However, Plaintiff maintains that sometime in July of 1995 (around six and one-half or seven months after plaintiff took maternity leave), Betty Etheridge, a former co-employee at CPC (whom plaintiff, at the time of the communication, knew was no longer employed at CPC), told her that she was fired. Specifically, plaintiff alleges that Etheridge told her in July of 1995 that, moments after plaintiff left the office on January 13, 1995 to take maternity leave, Wayne Cowart, co-owner of defendant corporation, told Etheridge "we don't want Debbie back". However, Etheridge testified that she never told plaintiff she was fired because she did not know if plaintiff was fired or not. Wayne and Martha Cowart also deny ever telling plaintiff that she was fired.

Plaintiff also argues that she was "forced" to take maternity leave when Wayne Cowart allegedly told her she was a liability to the company and "asked" her to take maternity leave on January 13, 1995 [1]. Wayne Cowart stated in his deposition that he did not recall telling plaintiff she was a liability to the company or that she must take maternity leave.

Plaintiff suffered from complications during her February 7, 1995 delivery. Further complications forced plaintiff to return to the hospital on February 14, 1995. Plaintiff was never cleared by a doctor to return to work. Additionally, plaintiff has not sought employment of any kind since leaving the defendant's employ.

Plaintiff filed the instant action against defendant CPC alleging violations of Title VII, specifically the Pregnancy Discrimination Act, and intentional infliction of emo-tional distress. Defendant filed this Motion for Summary Judgment claiming it is entitled to judgment as a matter of law. Plaintiff contends that she has raised material issues of fact on her claims which should preclude summary judgment.

## II. Contentions

Defendant asserts that it is entitled to judgment as a matter of law because 1) plaintiff has not established a prima facie case of employment discrimination under the Pregnancy Discrimination Act or Title VII, and 2) plaintiff has not established a case of intentional infliction of emotional distress. Plaintiff argues that material issues of fact remain on her claims which should preclude summary judgment.

## III. Discussion

### A. Summary judgment standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be entered in favor of the movant where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to any material fact and that (2) the moving party is entitled to judgment as a matter of law." *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Irby v. Bittick,* 44 F.3d 949, 953 (11th Cir.1995). The movant's entitlement to judgment as a matter of law is satisfied where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once a party has moved for summary judgment and properly supported its motion, the burden shifts to the nonmovant to create, through the evidentiary forms listed in FED.R.CIV.P. 56(c), genuine issues of material fact necessitat-

---

1. Allen depo.: Question: Okay. How were you fired? Answer: Well, let me say this. I was told that I was a liability to the company, being pregnant, and I was asked to take maternity leave.... Allen depo. p. 46.

ing a trial. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548.

## B. Claims

### 1. Employment Discrimination

A plaintiff in a Title VII discrimination case can proceed in one of two ways. *Piantanida v. Wyman Center, Inc.*, 927 F.Supp. 1226, 1238 (E.D.Mo.1996), *aff'd* 116 F.3d 340 (8th Cir.1997), *citing Stacks v. Southwestern Bell Yellow Pages*, 996 F.2d 200 (8th Cir.1993). When a plaintiff produces direct evidence, such as statements by decisionmakers clearly showing that [her pregnancy] was a motivating factor in the employment decision; or at least significant circumstantial evidence showing a specific link between the discriminatory animus and the challenged employment decision, the burden-shifting standards established by *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), come into play. *Id., citing Stacks v. Southwestern Bell Yellow Pages*, 996 F.2d at 201 n. 1; *Beshears v. Asbill*, 930 F.2d 1348, 1353 (8th Cir.1991). In the absence of such evidence, the guidelines set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) are applicable. *Id., citing Stacks v. Southwestern Bell Yellow Pages*, 996 F.2d at 202; *Johnson v. Minnesota Historical Society*, 931 F.2d 1239, 1242–43 (8th Cir. 1991); *Halsell v. Kimberly–Clark*, 683 F.2d 285, 289 (8th Cir.1982), *citing Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), *cert. den.*, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983).

#### a. Direct Evidence

Plaintiff contends that she has put forth direct evidence of discrimination. Specifically, plaintiff believes the following statements are direct evidence: Wayne Cowart's alleged statements to plaintiff that she was a liability to the company and that she was stealing from him when she attended doctors appointments.

If a plaintiff can produce evidence which demonstrates that an illegitimate criterion (in the present case, pregnancy) was a motivating factor in the challenged employment decision, then the burden-shifting framework of *Price Waterhouse* is applied. *Id.* Under *Price Waterhouse*, once the plaintiff establishes that the illegitimate criterion was a motivating factor in the challenged employment decision, the burden of persuasion shifts to the defendant employer to show that it would have made the same decision absent the illegitimate criterion. *Id., citing Stacks v. Southwestern Bell Yellow Pages*, 996 F.2d at 202; *Beshears*, at 1353. The *Price Waterhouse* burden shifting only applies "when there truly are mixed motives: when the company has a valid interest and there is evidence of discrimination as a motivating factor in the decision." *Id. citing Price Waterhouse*, 490 U.S. at 260, 109 S.Ct. at 1795.

Direct evidence is evidence, which if believed, proves the existence of fact in issue without inference or presumption. *Burrell v. Board of Trustees of Georgia Military College*, 125 F.3d 1390, 1393 (11th Cir.1997). In *Beshears*, supra, the Court noted that such evidence does not include "stray remarks in the workplace", "statements by nondecisionmakers", or "statements by decisionmakers unrelated to the decisional process itself". *Piantanida*, at 1238, *quoting Price Waterhouse*, 490 U.S. at 277, 109 S.Ct. at 1804; *Stacks v. Southwestern Bell Yellow Pages*, 996 F.2d at 202; *See also, Kriss v. Sprint Communications Co., Ltd. Partnership*, 58 F.3d 1276 (8th Cir.1995). The *Beshears* Court went on to note that such evidence may include "evidence of actions or remarks of the employer that reflect a discriminatory attitude" and "[c]omments which demonstrate a discriminatory animus in the decisional process, or those uttered by individuals closely involved in employment decisions". *Id.*, at 1238–1239, *quoting Price Waterhouse*, 490 U.S. at 277, 109 S.Ct. at 1804; *Kriss*, at 1282;

*Stacks v. Southwestern Bell Yellow Pages,* 996 F.2d at 202–03. Thus, the plaintiff's burden is to produce evidence (of statements, comments, actions) which demonstrate a causal relationship to the challenged employment decision. *Id.,* at 1239, *citing Sargent v. Paul,* 16 F.3d 946, 948 (8th Cir.1994).

■ In this case plaintiff has produced direct evidence. However, the pivotal question is: direct evidence of what? Plaintiff has produced no evidence showing that she was actually fired or discharged by a company representative. By her own admission when she left defendant, she was "asked" to take maternity leave but nobody told her she was fired. The only testimony regarding plaintiff being fired is plaintiff's assertion that Betty Etheridge told her in July of 1995 (six and one-half or seven months after plaintiff took leave) that she was fired. Although Etheridge denies making such a statement, for summary judgment purposes, the statement shall be accepted as true. Accepting the statement's veracity, it does not constitute plaintiff knowing or believing that she was fired on January 13, 1995. At most this "direct evidence" shows why Wayne Cowart "asked" plaintiff to take maternity leave. As will be discussed in greater detail infra, defendant reasonably "asked" plaintiff to take maternity leave when plaintiff was eight and one-half months pregnant; she had experienced certain complications during pregnancy; and some of her job duties included working in a building that housed dangerous chemicals such as pesticides and other chemicals and filing papers. Accordingly, plaintiff's purported direct evidence does not establish a causal connection between the statements and the challenged employment decision (discharge).

**b. Circumstantial Evidence**

Having failed to produce direct evidence of discrimination in "discharging" plaintiff, plaintiff must turn to the circumstantial evidence test set out in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *McDonnell Doug-*

*las,* established a three-part analysis for Title VII disparate treatment cases. *Id.* Under *McDonnell Douglas,* a Title VII plaintiff must first establish a prima facie case of intentional discrimination by a preponderance of the evidence. *Id.* If the plaintiff successfully establishes a prima facie case of intentional discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Id.* If the defendant employer meets this burden of production, the plaintiff employee must show by a preponderance of evidence that the articulated reason(s) for the challenged employment action are pretextual and that the illegitimate criterion was the motivating reason. *Id.* At all times the plaintiff employee possesses the ultimate burden of proving to the Court that s/he was the victim of intentional discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Favors v. Fisher,* 13 F.3d 1235, 1237–38 (8th Cir.1994); *Webb v. Missouri Pacific R. Co.,* 826 F.Supp. 1192, 1211 (E.D.Ark.1993).

**1. Prima Facie Case**

■ "The elements necessary to establish a prima facie case vary according to the circumstances of the alleged discrimination." *Piantanida,* at 1239, *quoting Jones v. Frank,* 973 F.2d 673, 676 (8th Cir.1992); *See also Williams v. Ford Motor Co.,* 14 F.3d 1305, 1308 (8th Cir.1994). In this Pregnancy Discrimination Act case, in order for [Allen] to establish her prima facie case, she must demonstrate that 1) she is a member of a protected group; 2) that she was qualified for her position; 3) that she suffered an adverse employment decision; and 4) that she was replaced by someone outside of the protected class of comparable qualifications. *Id.,citing Afande v. National Lutheran Home for the Aged,* 868 F.Supp. 795, 801 (D.Md. 1994); *LaFleur v. Westridge Consultants,* 844 F.Supp. 318, 324(1994).

Plaintiff fails to satisfy the second and third prongs of the test. Plaintiff was not qualified for the position and she did not suffer an adverse employment action.

## Qualification

■ Plaintiff was not qualified for the position of bookkeeper at CPC. Plaintiff was never cleared by a doctor to return to work and plaintiff admits that she never attempted to return to that job or the workforce in general. Plaintiff testified as follows:

Question: You're not working today?

Answer: No.

Question: Have you worked at all since you delivered your second child?

Answer: No.

Question: Okay. Have you sought any type of employment?

Answer: No.

Question: Why haven't you sought employment?

Answer: My doctor has not told me that I can return to work....

Question: Why haven't you sought employment since you had your child?

Answer: I don't know....

Question: Do you have any intentions of applying anytime in the next three or four or five months for a job?

Answer: No.

Question: Okay.

Answer: Because I want to go back to school.

Allen depo. pp. 52–54. Plaintiff's position was held open until April 3, 1995 when defendant hired a replacement. Accordingly, plaintiff fails to meet the second element of her prima facie case because she has not shown that she was qualified for the position.

## Express Discharge

■ Assuming for the sake of argument that plaintiff was qualified she suffered no adverse employment action. Plaintiff was not expressly discharged[2] by a represen-

tative of defendant CPC or unlawfully asked to take maternity leave.

Plaintiff admitted in her deposition that no representative of CPC told her at the time she took maternity leave that she was fired or was not welcomed to return to work after delivery. However, plaintiff testified that Betty Etheridge told plaintiff she was fired in July of 1995 (six and one-half or seven months after taking maternity leave). However, at this time, plaintiff knew that Etheridge had resigned from CPC and thus had no authority to speak as defendant's agent. Accordingly, if plaintiff was informed by Betty Etheridge to this effect in July of 1995, then plaintiff has still failed to show that anyone told her she was fired or that she was not wanted back prior to July of 1995. Between January 13, 1995 and July of 1995, plaintiff had more than ample opportunity to return to work or inquire as to whether her employment remained.

Additionally, despite plaintiff's contention that she did not communicate with either of the Cowarts following her delivery, clear evidence shows she did, in fact, come into contact with the Cowarts after delivery. For instance, the day after plaintiff got out of the hospital she went to the CPC office in a limousine with her baby (to show the baby off) and apparently did not inquire about her job. During such contacts, plaintiff had an opportunity to inquire into or discuss her belief that she had been fired.

Furthermore, Betty Etheridge testified that she never told plaintiff that plaintiff was fired because she (Etheridge) did not know whether plaintiff was fired or not. Wayne and Martha Cowart also both testified that they never told plaintiff she was fired. Accordingly, plaintiff has failed to establish the third element of her prima facie case because she has produced no evidence establishing that she suffered an adverse employment action in the form of being discharged.

**2.** Plaintiff has not argued a constructive discharge theory, other than that she was forced to take maternity leave, which shall be addressed in the next section.

## Mandatory Maternity Leave

Having found plaintiff was not expressly discharged, the Court shall address plaintiff's claim that she was unlawfully "forced" to take maternity leave. While plaintiff does not assert that she was told that she was fired by an employee of defendant at the time she took maternity leave, she maintains that she was "forced" to take maternity leave, which she apparently deems equivalent to being fired[3]. The Court does not agree with plaintiff that Wayne Cowart's "asking" her to take maternity leave at eight and one half months pregnant was equivalent to a firing or in any way an unlawful employment action.

While mandatory maternity leave policies are unconstitutional, employers are allowed to place employees on maternity leave based on the individual circumstances. The presumption of incapacity and unavailability for employment created by the challenged provision is virtually identical to the presumption found unconstitutional in *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52. *Turner v. Department of Employment Sec. and Bd. of Review of the Indus. Com'n of Utah*, 423 U.S. 44, 46, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975). In *LaFleur*, the Court held that a school board's mandatory maternity leave rule which required a teacher to quit her job several months before the expected birth of her child and prohibited her return to work until three months after childbirth violated the Fourteenth Amendment. *Turner*, at 46, 96 S.Ct. 249. Noting that

"freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause," 414 U.S., at 639, 94 S.Ct. at 796, the Court held that the Constitution required a more individualized approach to the question of the teacher's physical capacity to continue her employment during pregnancy and resume her duties after childbirth since "the ability of any particular pregnant woman to continue at work past any fixed time in her pregnancy is very much an individual matter." *Turner*, at 46, 96 S.Ct. 249, *citing LaFleur*, at 645, 94 S.Ct. at 799.

Based on the individual circumstances of this case, taking plaintiff's allegations as true[4], defendant reasonably asked plaintiff to take maternity leave. The plaintiff became pregnant in or around June of 1994, went on maternity leave on January 13, 1995, and gave birth to her child on February 7, 1995. It was within the discretion of the defendant to place plaintiff on maternity leave at eight and a half months pregnant, when she had already experienced medical problems during the pregnancy and was required to work in a place that housed dangerous chemicals such as pesticides and other chemicals used for extermination[5]. *See Palmer v. Circuit Court of Cook County, Illinois*, 117 F.3d 351 (7th Cir.1997) (holding an employer should not be placed on "the razor's edge" in danger of violation a Federal act on one hand or jeopardizing an employee's health and safety on the other). Accordingly, plaintiff suffered no adverse employment

---

**3.** This assumption is based on plaintiff's deposition. Plaintiff stated that she was fired. However, when asked how she was fired, her response was, well, let me say this. I was told that I was a liability to the company, being pregnant, and I was asked to take maternity leave. . . . She later agreed with defendant's counsel's characterization that plaintiff believed she had been forced to take maternity leave.

**4.** Wayne Cowart, in his deposition, stated that he had no memory of either telling plaintiff she was a liability or that she had to take

maternity leave. However, the Court at summary judgment must take plaintiff's allegations, that both of the events took place, as true.

**5.** While there is some dispute over whether or not defendant had a formal maternity policy at the time plaintiff took maternity leave, this Court was not privy to any such policy and therefore, relied on testimony of plaintiff that defendant told her she was a liability to the company and asked her to take maternity leave, regardless of a formal policy.

action to the extent she was allegedly "forced" to take maternity leave.

### 2. Legitimate Nondiscriminatory Reason

 Despite plaintiff's inability to establish a prima facie case, the Court moves on to the second part of the *McDonnell Douglas* test which shifts the burden to the defendant to produce legitimate, nondiscriminatory reasons for plaintiff's alleged discharge. Defendant's stated reasons are that the plaintiff made no attempt to return to work and was never medically cleared to do so. Defendant argues that the position was only filled after it became clear that plaintiff was not returning to work. *See Weiner v. Flyer Publishing Co.*, 945 F.Supp. 1559 (S.D.Fla.1996) (holding that employer had rebutted the presumption of discrimination by proving that plaintiff had been fired for a legitimate reason: that she abandoned her post and never returned to work). *See also McArthur v. Southern Airways, Inc., et al.*, 404 F.Supp. 508 (N.D.Ga.1975) (holding, employee who failed to show that her failure to return to work at the end of her pregnancy was not voluntary, was not entitled to the full affect of the consent decree).

### 3. Pretext

To survive defendant's summary judgment motion and meet the third stage of the *McDonnell Douglas* analysis, plaintiff must now "establish the existence of facts which, if proven at trial, would permit a jury to conclude that the defendant's proffered reason is pretextual and that intentional discrimination was the true reason for the defendant's actions." *Piantanida,* at 1241, *citing Krenik v. County of Le Sueur,* 47 F.3d 953, 958 (8th Cir.1995). Allen must demonstrate that the reasons advanced by defendant are pretextual and that the real motive for her alleged discharge was her status as a pregnant female.

6. There is some dispute as to whether or not plaintiff willingly performed this task, which was a normal job duty, at this stage of preg-

Having carefully reviewed the record presented, the Court finds that the plaintiff has failed to set forth sufficient affirmative evidence demonstrating that a genuine issue of material fact on the issue of pretext and the ultimate issue of intentional discrimination exists. Plaintiff has not shown that she suffered an adverse employment action prior to taking or during maternity leave. She has also failed to offer a legitimate reason why she has not sought medical clearance to return to the disputed position or any other position. Accordingly, plaintiff's testimony regarding comments made to her at work prior to her taking maternity leave and her conversation with Betty Etheridge six and one-half months after taking leave do not raise a reasonable inference that defendant's decision to hire someone to fill her position on April 3, 1995, was discriminatory. Defendant is therefore entitled to judgment as a matter of law on plaintiff's PDA claim of discriminatory discharge.

### 4. Conclusion

Plaintiff has failed at all stages of the *McDonnell Douglas* analysis and is entitled to no relief under Title VII. Accordingly, defendant is entitled to summary judgment on the Title VII claims.

### 2. Intentional Infliction of Emotional Distress

Plaintiff asserts a state law claim of Intentional Infliction of Emotional Distress. Plaintiff argues that the following actions were instances of intentional infliction of emotional distress: when plaintiff sat on the floor at eight and one-half months pregnant to file papers[6], when Wayne Cowart asked her what she would do if her baby was born black, when Wayne Cowart allegedly told plaintiff she was a liability to the company and asked her to take maternity leave, when Wayne Cowart allegedly told plaintiff she was

nancy or whether she was asked or forced to perform this duty.

stealing from him when she went to the doctor, and various other statements made by Cowart (not enumerated by plaintiff) which supposedly made plaintiff cry. The Court finds plaintiff's claims lacking in merit.

 To state a claim for intentional infliction of emotional distress under Georgia law, the plaintiff must show that the defendant's behavior was so extreme or outrageous that "no reasonable man could be expected to endure it." *Hammer v. Slater*, 20 F.3d 1137 (11th Cir.1994), *quoting Bridges v. Winn–Dixie of Atlanta, Inc.*, 176 Ga.App. 227, 230, 335 S.E.2d 445 (1985). Plaintiff claims that defendant's harsh comments and alleged forced maternity leave satisfy this standard and as such summary judgment should be denied. However, "whether a claim rises to the level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." *Yarbray v. Southern Bell Tel. & Tel. Co.*, 261 Ga. 703, 706, 409 S.E.2d 835 (1991). Instances in which the plaintiff has adequately maintained a claim of intentional infliction of emotional distress include: where the defendant attempted to collect a bill by frightening the plaintiff at gunpoint, *American Finance & Loan Corp. v. Coots*, 105 Ga.App. 849, 125 S.E.2d 689 (1962); and where defendant threatened an eleven year old girl with calling the police and having her thrown in jail if she did not allow defendant to enter the house. *Delta Finance Co. v. Ganakas*, 93 Ga.App. 297, 91 S.E.2d 383 (1956). A defendant's conduct "must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Cornelius v. Auto Analyst, Inc.*, 222 Ga. App. 759, 476 S.E.2d 9 (1996).

 If plaintiff's claim for intentional infliction of emotional distress is directed at an allegedly wrongful discharge, her claim must fail because Georgia law does not recognize wrongful discharge of at-will employees. *See Beck v. Interstate Brands Corp.*, 953 F.2d 1275 (11th Cir.1992), *citing Ray v. Edwards*, 557 F.Supp. 664 (N.D.Ga. 1982). Put another way, if the intentional infliction of emotional distress claim "directly stems from the termination [of an at-will employee] and is clearly not independent of the severance of employment," then plaintiff's claim should be dismissed. *Mr. B's Oil Co. v. Register*, 181 Ga.App. 166, 351 S.E.2d 533 (1986). It is clear that plaintiff is an at-will employee and that her claim of emotional distress directly stems from her alleged termination. Therefore, summary judgment should be entered as to this claim on behalf of the defendant.

 Alternatively, assuming the allegations against defendant are true, such actions still do not rise to the requisite level of outrageousness and egregiousness so as to state a viable claim of intentional infliction of emotional distress. Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Cooler v. Baker*, 204 Ga.App. 787, 420 S.E.2d 649 (1992) (*quoting* with approval The Restatement (Second) of Torts [Ch. 2, Emotional Distress], § 46(1), comment d). Furthermore, plaintiff has failed to show that she suffered any emotional distress from the defendant's alleged actions. "The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress...." *See Bridges v. Winn–Dixie Atlanta, Inc., et al.*, 176 Ga.App. 227, 335 S.E.2d 445 (1985) (*quoting* The Restatement (Second) of Torts [Ch. 2, Emotional Distress,] § 46(1), comment j.). Here the Court finds that the alleged actions were not egregious enough so as to constitute infliction of emotional distress and that plaintiff has not shown that she suffered from severe emotional distress.

Plaintiff's Intentional Infliction of Emotional Distress claim is barred by Georgia law. Alternatively, plaintiff's claim does not rise to the requisite level of egregiousness to constitute a valid claim. Accord-

ingly, defendant is entitled to summary judgment on this claim.

## IV. Conclusion

Having carefully reviewed the record in this case, the Court finds that plaintiff is entitled to no relief under any of her claims. Plaintiff's Title VII claims fail because she has not established a prima facie case or shown evidence that defendant's proffered reason for replacing her is pretextual. Plaintiff's Intentional Infliction of Emotional Distress claim fails because it is barred by state law and fails to meet the requisite level of egregiousness to maintain the claim. Accordingly, defendant CPC's Motion for Summary Judgment [Tab # 34] is **HEREBY GRANTED IN ITS ENTIRETY.**