A91A2029. WILLIAMS v. VOLJAVEC.
(415 SE2d 31)

McMURRAY, Presiding Judge.

Florence B. Williams (plaintiff) filed an action against her physician, B. F. Voljavec (defendant), alleging intentional infliction of emotional distress. Defendant denied the material allegations of the complaint and the case was tried before a jury. Plaintiff's testimony reveals the following:

In 1979, plaintiff went to South Fulton Hospital for treatment of complications resulting from chronic diabetes. Defendant was then on staff at the hospital and was assigned to treat plaintiff. Defendant examined plaintiff and informed her "that [her] heart was not getting enough oxygen and that [medication] would . . . stop the pain." Sometime later, plaintiff was admitted to the emergency room at South Fulton Hospital and defendant again treated plaintiff for complications associated with chronic diabetes. (Plaintiff became dissatis-

fied with defendant's manner and professional conduct during her second stay at South Fulton Hospital and she then decided to terminate her relationship with defendant.)

On January 23, 1983, plaintiff went to the emergency room at South Fulton Hospital complaining of chest pain. She informed the emergency room staff that she did not want treatment from defendant. Plaintiff was then examined by an emergency room physician and admitted to the hospital's coronary care unit. The next morning, defendant "came [to the coronary care unit and plaintiff] asked him what he was doing here because [she] did not want him." Defendant "mumbled out something" but continued to come by and see her while she was in the coronary care unit. Two days later, plaintiff was ordered moved from the coronary care unit to a regular hospital room. Plaintiff was then informed that her condition would enable her to return home by the end of the week.

As plaintiff was wheeled past a nurse's station on the way from the coronary care unit, she saw defendant look at a nurse and say "damn, are you just moving her . . ." Shortly thereafter, defendant came to plaintiff's room and "asked [plaintiff] for [her] insurance claim forms and [plaintiff] told him that [she] was sorry, [that she] didn't bring any forms because [she] came through emergency." Plaintiff told defendant, "have someone from your office call [my insurance carrier], and they will send you a handful of blanks." Defendant responded, "it [isn't my] problem to get blanks, [you're] supposed to get them." Plaintiff said, "Doctor Voljavec, please, just wait and when my daughter-in-law comes, I will have her to bring you some blanks . . ." Defendant responded, "it ain't [my] damn problem to get no blanks for the patients to sign . . ." and "[I am not] going to wait no seven or eight months to get paid." Plaintiff pleaded with defendant not to discuss the matter further and asked defendant to leave the room, but defendant "got louder." Plaintiff then began experiencing discomfort and severe chest pain. A nurse came into the room and defendant started to leave, but he first instructed the nurse "to give [plaintiff] a shot of something." Plaintiff was later sedated and taken to the coronary care unit. She was discharged from the hospital on February 11, 1983.

The trial court granted defendant's motion for directed verdict and this appeal followed. *Held*:

To sustain a cause of action for intentional infliction of emotional distress through the use of abusive or obscene language, the defendant's conduct (action) must have been so abrasive or obscene as to naturally humiliate, embarrass, frighten, or outrage the plaintiff. *Moses v. Prudential Ins. Co. of America*, 187 Ga. App. 222, 225 (369 SE2d 541). Further, the alleged emotional distress (reaction) must be so severe that no reasonable person could be expected to endure it.

Id. at 226. A defendant's knowledge of a plaintiff's particular susceptibility to injury from emotional distress is often critical in weighing the extreme and outrageous character of conduct, i.e., "[t]he conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know." Restatement of the Law Second, Torts 2d, Vol. 1, Chapter 2, The Interest in Freedom from Emotional Distress, § 46 (1), comment (f), p. 75.

In the case sub judice, plaintiff's testimony, that defendant relentlessly vented anger against her while she was a hospital patient; that defendant was then aware of plaintiff's potentially fragile physical condition and that plaintiff's physical condition deteriorated after defendant's alleged conduct, is sufficient to sustain an action for intentional infliction of emotional distress. Consequently, the trial court erred in directing a verdict for defendant. OCGA § 9-11-50. Genuine issues of material fact remain as to whether defendant's conduct was so abrasive or obscene as to naturally humiliate, embarrass, frighten, or outrage the plaintiff and whether plaintiff's alleged reaction was reasonable under the circumstances. See *Greer v. Medders*, 176 Ga. App. 408, 409 (336 SE2d 328).

*Judgment reversed. Sognier, C. J., concurs. Andrews, J., concurs in the judgment only.*

DECIDED JANUARY 15, 1992 —
RECONSIDERATION DENIED JANUARY 28, 1992 —

*Glenville Haldi*, for appellant.
*Sullivan, Hall, Booth & Smith, Alexander H. Booth*, for appellee.