## A01A1899. MABLETON PARKWAY CVS, INC. v. SALTER.
(561 SE2d 478)

MILLER, Judge.

Where a court has ordered the defendant corporation to designate a witness under OCGA § 9-11-30 (b) (6) to respond to inquiries in certain areas known to the corporation, does the designated witness's lack of knowledge in these areas justify a finding of contempt against the corporation? We hold that it does and affirm this portion of the court's contempt order. However, we reverse that portion requiring the corporation to disclose settlement amounts paid in other cases, as such confidential information is irrelevant to this case.

When reviewing a trial court's findings on a motion for contempt for failure to obey a discovery order, we construe the evidence in favor of those findings and will not disturb them if there is any evidence to support them.[1] So construed, the evidence shows that Mableton Parkway CVS, Inc.[2] misfilled a prescription for Frances Salter, who then allegedly suffered damages. Salter sued CVS and in April 1999 sought to depose a representative of the corporation (to be designated under OCGA § 9-11-30 (b) (6)) about other suits against the defendant arising out of similar facts. Specifically, Salter asked

---

[1] See *Potter v. American Medcare Corp.*, 225 Ga. App. 343, 346 (484 SE2d 43) (1997); see also *Resource Network Intl. v. Ritz-Carlton Hotel Co.*, 232 Ga. App. 242, 244 (1) (f) (501 SE2d 573) (1998).

[2] The defendant initially pled in its answer that Revco Discount Drug Centers, Inc. was the proper defendant, then represented at the contempt hearing that the defendant should be CVS Pharmacy, Inc., and then reversed positions at the hearing to reconsider contempt and stated that the correct defendant was Revco Discount Drug Centers, Inc. Since defendant and Revco are subsidiaries of CVS Pharmacy, Inc. and the discovery has been answered as if the parent were the defendant, and since the defendant has taken shifting positions on the matter, the matter is of little import in deciding the merits of the sanctions order at issue.

that someone be designated who had "[k]nowledge of the facts and circumstances surrounding Defendant's involvement in any civil action in State or Federal Court in Georgia (other than this civil action) concerning [similar torts] in the last five years." Arguing that such information was irrelevant, CVS sought a protective order to preclude this inquiry, which the court in October 1999 denied when it ordered CVS to designate and produce such a witness.

Despite requests from Salter, CVS did not designate a representative until late March 2000. The deposition took place in April 2000. The representative described generally the allegations in nineteen of twenty-five responsive lawsuits identified by CVS, but could not describe the allegations in the remaining six. Reciting only the nature of the allegations contained in the 19 lawsuits, the representative could not, with regard to any of the suits, (1) say whether CVS had filed an answer, (2) identify others having knowledge at the corporation, (3) identify the pharmacists or supervisors involved or whether any were disciplined, (4) comment on the current status of the case, (5) describe the corporation's position in the lawsuit, or (6) state whether an incident report had been filed. Nor could the representative even confirm that the list of 25 lawsuits was complete. Indeed, CVS later identified additional suits.

Salter moved to have CVS held in contempt for failing to comply with the court's order and sought a $100,000 sanction, an order compelling the designation of witnesses having the requisite knowledge, and an award of attorney fees. The court granted the motion and ordered CVS to produce witnesses having knowledge of the requested areas and to pay Salter's attorney fees in bringing the contempt motion. The court sua sponte also ordered that the designated witnesses identify any amounts paid to settle these other cases. No $100,000 sanction was imposed. CVS appeals, arguing that the evidence does not support a contempt finding and that the portion requiring CVS to identify settlement amounts is error.

1. A trial court may sanction a party who wilfully violates or disobeys a court discovery order.[3] A showing of actual wilfulness is not required, only a conscious or intentional failure to act.[4] In making this determination, the court considers the time period described in the court order *and* the entire time period beginning with the service of the discovery request and ending with compliance.[5] "Events transpiring during this entire time period are probative of whether

---

[3] *Mayer v. Interstate Fire Ins. Co.*, 243 Ga. 436, 438-439 (2) (254 SE2d 825) (1979); *Resource Network Intl.*, supra, 232 Ga. App. at 242 (1).

[4] *Resource Network Intl.*, supra, 232 Ga. App. at 242 (1).

[5] Id.

appellant acted with conscious indifference to the consequences of failure to comply with the order compelling [the discovery]."[6]

Here the evidence showed that Salter served the Rule 30 (b) (6) notice of deposition in April 1999, resulting in CVS immediately filing for a protective order. Salter responded by moving to compel the deposition. In October 1999 the court denied the protective order and ordered that CVS designate a person to respond to the requested inquiries. The order specified no time period. Despite entreaties from Salter, CVS dragged its feet, repeatedly breaking promises and waiting until late March 2000 to designate a witness. The deposition took place in April 2000, one year after the original notice of deposition was served and six months after CVS was ordered to do so.

The deposition notice had specified that the representative have "[k]nowledge of the facts and circumstances surrounding Defendant's involvement in" Georgia civil actions alleging torts similar to this case. Although CVS acknowledged there were 25 such lawsuits, the designated representative could not give the most elementary information regarding CVS's involvement in the suits, including whether CVS had filed an answer, what CVS's position was, what CVS pharmacists were involved, what the current status of the case was, whether an incident report had been filed, or who at CVS could answer such questions. He could not identify the nature of the allegations in six of the lawsuits and most disturbingly could not even confirm whether the list of twenty-five suits was complete. Indeed, over the next nine months CVS identified more suits.

CVS clearly did not obey the court's discovery order. Nevertheless, on appeal CVS contends that producing a witness who had some rudimentary knowledge of the allegations in 19 of the incomplete list of 25 lawsuits complied with CVS's understanding of the requirement that the witness have knowledge of the facts and circumstances surrounding CVS's involvement in the suits. A witness who cannot even state whether CVS filed an answer let alone what CVS's position is in the case or what the case's status is can hardly be said to have knowledge of CVS's involvement in the case. Combined with his utter lack of knowledge on six of the suits and the incomplete nature of the list, this evidence supported the court's finding that CVS wilfully disobeyed the court's discovery order.

The sanction imposed was hardly burdensome. In fact, it was limited only to attorney fees when the court had a large number of tools within its arsenal to resolve this issue, including striking the answer. The "contempt order" was in effect nothing more than another order compelling compliance with the notice of deposition, plus

---

[6] (Punctuation and footnote omitted.) Id.

an award of some $3,600 in attorney fees (representing the fees incurred in bringing the motion), as would be authorized in an order compelling compliance.[7] The court's discretion is particularly broad when dealing with a party's failure to obey a discovery order.[8] "[We] will not interfere with the exercise of that discretion absent a clear abuse."[9] We discern no clear abuse here and therefore affirm the order with the exception of the matter discussed in Division 2.

2. We find that the trial court abused its discretion by compelling CVS to disclose the amounts it has paid in settling similar tort cases in Georgia. OCGA § 24-3-37 generally prohibits the admission of settlement negotiations.[10] This furthers the policy of encouraging settlements, as the possibility that the settlement negotiations or amounts paid in settlement could be used against the defendant would obviously have a chilling effect on a defendant's willingness to pursue settlement. "The purpose of this Code section is to encourage settlements and protect parties who freely engage in negotiations directed toward resolution of lawsuits."[11]

Salter never sought this information in the court below, as such is clearly outside the scope of relevance in the discovery of this case. Nor is Salter able on appeal to articulate how the information would be relevant to this case. As no evidence or rationale supports its holding, the court's sua sponte ordering of the disclosure of settlement amounts was an abuse of its discretion and must therefore be reversed. The remainder of the order is affirmed.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Eldridge, J., concur.*

DECIDED MARCH 8, 2002.

*Hawkins & Parnell, Warner S. Fox, Matthew F. Barr*, for appellant.

*Trace M. Dillon*, for appellee.

---

[7] See OCGA § 9-11-37 (a) (4) (A).
[8] *Tandy Corp. v. McCrimmon*, 183 Ga. App. 744, 745-746 (1) (360 SE2d 70) (1987).
[9] (Citations and punctuation omitted.) Id. at 745 (1).
[10] *Citadel Corp. v. Sun Chem. Corp.*, 212 Ga. App. 875, 877 (2) (443 SE2d 489) (1994).
[11] (Citation and punctuation omitted.) *Computer Communications Specialists v. Hall*, 188 Ga. App. 545, 546 (1) (373 SE2d 630) (1988).