## A05A0682. MABLETON PARKWAY CVS, INC. et al. v. SALTER.
### (615 SE2d 558)

BARNES, Judge.

This court granted the defendant drug store's petition for an interlocutory appeal of the trial court's denial of its motion for summary judgment in this case involving a wrongly-filled prescription. For the reasons that follow, we affirm in part, reverse in part, and vacate in part the trial court's order denying summary judgment to the defendant.

Frances Salter sued Mableton Parkway CVS, Inc. for twice filling her prescription with a medication different from the one her doctor prescribed for her, asserting eight different theories of recovery.[1] CVS answered, and the parties' subsequent discovery process was lengthy and acrimonious, culminating with CVS's appeal of the trial court's contempt citation to this court. In *Mableton Parkway CVS v. Salter*, 254 Ga. App. 162 (561 SE2d 478) (2002), we affirmed that portion of the order finding the defendant drug store corporation in contempt for failing to produce a witness with certain knowledge, as the trial court previously ordered it to do. We also reversed the trial court's requirement that the corporation disclose settlement amounts paid in other cases, finding that the information was neither relevant nor admissible in the current case. Id.

On remand, the parties undertook further discovery, then CVS filed a motion for summary judgment. Salter opposed the motion, and after a hearing, the trial court denied it. In a detailed order submitted by Salter (both parties submitted proposed orders pursuant to the trial court's direction at the summary judgment hearing), the trial court found that genuine issues of material fact existed on all of Salter's claims against CVS, including: (1) professional negligence; (2) negligence and gross negligence; (3) fraud; (4) negligent misrepresentation; (5) breach of implied warranty of merchantability; (6) breach of contract; (7) intentional infliction of emotional distress; and (8) violations of the Fair Business Practices Act. The court further found issues of fact as to whether Salter may pierce the corporate veil of the CVS legal entities and whether she may recover bad faith punitive damages.

CVS appeals only that portion of the trial court's order denying it summary judgment on Salter's claims of fraud, punitive damages, and intentional infliction of emotional distress, as well as the trial court's findings of fact and evidentiary rulings. Thus, we affirm those

---

[1] Salter later added Revco Discount Drug Center, Inc., CVS Corporation, and CVS Pharmacy, Inc. as defendants.

portions of the order denying summary judgment on Salter's remaining claims for damages.

On appeal we review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Preferred Real Estate Equities v. Housing Systems*, 248 Ga. App. 745 (548 SE2d 646) (2001). Further, when ruling on a motion for summary judgment, a court must give the opposing party the benefit of all reasonable doubt, and the evidence and all inferences and conclusions therefrom must be construed most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843) (1988). On motions for summary judgment, however, courts cannot resolve the facts or reconcile the issues. *Fletcher v. Amax, Inc.*, 160 Ga. App. 692, 695 (288 SE2d 49) (1981). When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997).

The record shows that plaintiff Frances Salter had high blood pressure for which she had been taking Lotrel. On December 6, 1996, Salter picked up her prescriptions at the Mableton CVS, but instead of receiving Lotrel, the pharmacist gave her Toprol. Both drugs are used to treat high blood pressure, but have different chemical components. Salter testified that she noticed the medication change and asked the pharmacist about it, but he said that he did not fill the prescription, but assumed that her doctor was called, so she began taking the Toprol.

Salter said she began to feel ill after a time but did not realize the cause and had the Toprol refilled. She even went to the emergency room seeking treatment for her symptoms. Tests revealed no cause for her symptoms, and her treating physician gave her pain medication and released her to go home. She finally obtained informational printouts about Toprol and Lotrel from the pharmacist, then called her doctor when she realized the two medications were not the same. Her physician "hit the ceiling," she said, when he found out she was taking Toprol instead of Lotrel.

CVS admits that its pharmacist erred, but denies that the substituted medication caused any injury to Salter, or that it acted fraudulently, intentionally inflicted emotional harm, or is liable for punitive damages.

1. CVS contends that the trial court erred in making findings of fact in its order denying the company's motion for summary judgment. "[T]he trial court cannot in considering summary judgment

weigh the evidence or determine its credibility. Instead, where there is a conflict in the evidence, . . . the matter must be submitted to a jury for resolution." (Citations and punctuation omitted.) *Dover v. Mathis*, 249 Ga. App. 753, 754 (549 SE2d 541) (2001); accord *Ades v. Werther*, 256 Ga. App. 8, 10 (1) (567 SE2d 340) (2002).

(a) CVS objects to five specific findings by the trial court, the first being that "Plaintiff was in fact injured as a result of the breach. Further there is no question that by dispensing the incorrect drug, Defendants caused Plaintiff's injuries." The testimony of Salter's treating cardiologist, however, was that he had never seen a similar drug substitution cause the profound symptoms of which Salter complained, although it could cause cold extremities and possibly abdominal pain in people predisposed to ischemic bowel. Salter's primary doctor said in his affidavit that the substituted drug caused or contributed to Salter's symptoms, such as shortness of breath, cold extremities, abdominal pain, fatigue, and depression.

> [W]hether proximate cause exists in a given case is a mixed question of law and fact. It requires both factfinding in the "what happened" sense, and an evaluation of whether the facts measure up to the legal standard set by precedent. Ordinarily, both determinations are most appropriately made by a jury upon appropriate instructions from the judge. The decision may be made by the trial judge or appellate court only if reasonable persons could not differ as to both the relevant facts and the evaluative application of legal standards (such as the legal concept of "foreseeability") to the facts. In other words, although what amounts to proximate cause is undeniably a jury question, it will be determined by the court as a matter of law in plain and undisputed cases.

(Citation and punctuation omitted.) *Atlanta Obstetrics & Gynecology Group v. Coleman*, 260 Ga. 569, 570 (398 SE2d 16) (1990). The issue of proximate cause in this case is disputed; as a result, the trial court erred in finding as a fact that the drug substitution caused Salter's injuries.

(b) CVS also contends the trial court erred in finding that the defendants' conduct was intentional because they "intentionally set policies and procedures that result in overworked pharmacists and misfilled prescriptions," that the pharmacist intentionally misfilled the prescription, and that they "intentionally denied making the misfill while knowing . . . they made a mistake." Evidence in the record disputes this factual finding.

Salter argues that her expert in community pharmacy dispensing errors testified that such errors occurred more frequently when

prescription filling workloads exceeded 20 to 24 prescriptions an hour. Pharmacist Foster testified that he filled approximately 150 to 200 prescriptions a day, which Salter argues could exceed twenty-four an hour if Foster worked an eight-hour day. But the expert also could not state whether the dispensing rate at CVS was high or not, and found nothing unusual or abnormal about the company's policies and procedures. Salter's expert pharmacist also offered no criticism of the company's pharmacy operations. Further, CVS conceded the pharmacy error in the first page of its summary judgment motion. The trial court erred in finding that the defendants' actions were intentional, because the evidence about intent is disputed.

(c) CVS contends that the trial court erred in finding that the pharmacist "indicated his indifference to the consequences when he stated that Toprol was a substitute for Lotrel, without checking," and in finding that

> [t]he defendants have indicated their indifference to the consequences of misfilled prescriptions given the number of misfills, the rate at which their employees are forced to work, their lack of any new policies or procedures as a result of misfills, and the lack of discipline for misfilled prescriptions. These facts, coupled with actions to destroy incident reports and lying about the number of errors made indicates a conscious disregard for the safety of the public.

To the contrary, the evidence does not establish as a matter of fact that CVS forced its pharmacists to work at a rate that led to increased errors. As discussed earlier, neither of Salter's expert witnesses saw a problem with the company's policies and procedures, and the CVS employees made no such statements in their depositions. The trial court erred in making these findings.

(d) CVS asserts that the trial court erred in finding that "[e]mployees of Defendant have lied under oath concerning the number of errors they made filling prescriptions." Salter contends that this finding is supported by the record because, in his deposition, pharmacist Foster testified he had never misfilled a prescription before Salter's, but in his incident report he wrote that he had previously misfilled two prescriptions. While a factfinder could conclude that this contradiction was a deliberate lie, it could also conclude that the pharmacist was forgetful. The trial court's factual finding in this regard was error.

(e) Finally, CVS argues that the trial court erred in finding that "Mrs. Salter was effectively given two drugs for her high blood pressure (Corgard and Toprol), and no drugs for her hypertension (Lotrel)." CVS correctly notes in its brief that the record contains no

evidence supporting this conclusion, and that hypertension is defined as persistent high blood pressure. Salter's treating cardiologist treated the terms interchangeably. The trial court erred in making this finding.

A review of the record reveals evidence disputing each of these facts. The trial court erred in making these findings, and those portions of the summary judgment order are hereby vacated.

2. CVS contends that the trial court erred in denying its motion for summary judgment on Salter's claims for fraud and misrepresentation, punitive damages, and intentional infliction of emotional harm.

(a) To sustain a claim for fraud, Salter must establish the existence of five elements: (1) a false representation; (2) scienter; (3) CVS's intention to induce Salter to act or refrain from acting in reliance; (4) Salter's justifiable reliance; and (5) damage. *Rhone v. Bolden*, 270 Ga. App. 712, 719 (5) (608 SE2d 22) (2004). "So long as one essential element under any theory of recovery is lacking the defendant is entitled to summary judgment as a matter of law irrespective of any issues of fact with regard to other essential elements." (Citation and punctuation omitted.) *Butler v. Terminix Intl.*, 175 Ga. App. 816, 818 (2) (334 SE2d 865) (1985).

Salter has not established that CVS made a misrepresentation to Salter so that she would act or refrain from acting. Salter claims that the pharmacist wilfully misrepresented that he checked on her prescription, but his alleged statement was that he did not fill the prescription, but assumed that her doctor was called. This statement is insufficient to show that CVS committed fraud, and the trial court erred in denying CVS's motion for summary judgment on Salter's claims for fraud and misrepresentation.

(b) CVS contends that the trial court erred in denying its motion for summary judgment on Salter's claim for punitive damages. OCGA § 51-12-5.1 (b) provides that

> Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

Salter argues that CVS is liable for punitive damages because it is indifferent to the consequences of its misfilled prescriptions, as evidenced by "the number of misfills, the rate at which their employees are forced to work, their lack of any new policies or procedures as

the result of misfills, and the lack of discipline for misfilled prescriptions." Salter cites to no evidence in the record to support these claims.

> [S]omething more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage. There is general agreement that, because it lacks this element, mere negligence is not enough. If a tort is committed through mistake, ignorance, or mere negligence, the damages are limited to the actual injury received, for vindictive or punitive damages are recoverable only when a defendant acts maliciously, wilfully, or with a wanton disregard of the rights of others.

(Citations and punctuation omitted.) *Roseberry v. Brooks*, 218 Ga. App. 202, 209-210 (4) (461 SE2d 262) (1995).

The record in this case contains no evidence that CVS's actions or omissions were egregious or made with conscious indifference to the consequences, only that its pharmacist made an error. Salter has not shown how CVS's other pharmacy claims show any kind of pattern, much less one of outrageous actions. The pharmacy's actions show gross negligence, at most, which is insufficient to sustain a claim for punitive damages. Therefore, the trial court erred in denying CVS's motion for summary judgment on Salter's claim for punitive damages.

(c) CVS contends that the trial court erred in denying its motion for summary judgment on Salter's claim of intentional infliction of emotional distress.

> "Liability (for this tort) has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " Restatement, Second, Torts § 46, Comment d, p. 73 (1965).

*Yarbrough v. SAS Systems*, 204 Ga. App. 428, 429 (3) (419 SE2d 507) (1992). Whether an action rises to the requisite level of outrageousness and egregiousness to sustain an intentional infliction of emotional distress claim is a question of law. If a reasonable person might find the conduct extreme and outrageous, causing severe emotional

distress, the jury then must find the facts and make its own determination. *Troncalli v. Jones*, 237 Ga. App. 10, 15 (3) (514 SE2d 478) (1999). In this case, the action upon which Salter bases her emotional distress claim is getting the incorrect prescription medication. While this error was unfortunate, it does not constitute extreme and outrageous conduct, but rather constitutes negligence. The trial court erred in denying CVS's motion for summary judgment on Salter's claim for intentional infliction of emotional distress; thus we reverse as to this claim.

3. Finally, CVS argues that the trial court erred in ruling sua sponte that evidence of 31 other lawsuits was relevant and admissible at trial. CVS did not argue or brief this evidentiary issue in its motion for summary judgment and Salter did not raise it in her response. Therefore, we vacate this portion of the trial court's order.

*Judgment affirmed in part, reversed in part and vacated in part. Ruffin, C. J., and Johnson, P. J., concur.*

DECIDED MAY 27, 2005.

*Hawkins & Parnell, Warner S. Fox, Matthew F. Barr*, for appellants.

*Trace M. Dillon*, for appellee.