A11A1472. JONES et al. v. FAYETTE FAMILY DENTAL CARE, INC. et al.
(718 SE2d 88)

DOYLE, Judge.

Laura Jones and her husband John brought this action in the State Court of Fayette County against Dr. Rick Verdin and Fayette Family Dental Care, Inc. ("the Practice"), for intentional infliction of emotional distress ("IIED") and for loss of consortium. Following a hearing, the trial court granted the motion for summary judgment filed by Verdin and the Practice, and the Joneses appeal. For the reasons explained below, we affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review the grant of summary judgment de novo, construing the evidence in favor of the nonmovant."[1]

Viewed in favor of the Joneses, the record shows the following. In September 2007, Laura was employed by the Practice as a dental assistant, working for Dr. Verdin.[2] According to Laura, on September 5, 2007, she walked out of an x-ray processing room and into a hallway, where she saw Verdin with his pants lowered. Verdin was holding his penis in his hand and was masturbating. Laura saw Verdin in profile for about five seconds before she turned and left; she does not know whether Verdin saw her or not. Before Laura left, Jennifer Spivey, another dental assistant who worked for the Prac-

---

[17] (Punctuation and footnote omitted.) *Thomas v. State*, 285 Ga. App. 290, 293-294 (2) (645 SE2d 713) (2007).

[1] (Citation and punctuation omitted.) *Tackett v. Ga. Dept. of Corrections*, 304 Ga. App. 310 (696 SE2d 359) (2010).

[2] Since 1993, except for short period of time in the late 1990s, Verdin has operated a solo dental practice.

tice, entered the hallway from the opposite direction and also saw Verdin masturbating. As he did so, he was looking at Spivey.

Instead of immediately leaving the office after the incident,[3] Laura assisted Verdin in treating a patient. At lunchtime, Laura and Spivey met with the office manager about the incident and resigned their employment. The two then reported the incident to the police. Although Verdin denies masturbating in the hallway that day, he entered a plea of nolo contendere to two counts of public indecency in connection with the incident.

As to Laura's claim for IIED, the Joneses allege that Verdin's actions directly injured Laura by humiliating, embarrassing, frightening, and outraging her, and they also claim that Verdin's actions resulted in John's loss of consortium. They alleged that the Practice is derivatively liable for Verdin's conduct under the theories of respondeat superior, ratification, and negligent hiring, retention, and supervision. In support of Laura's IIED claim, she testified that "it's just something I couldn't get out of my head. I was shocked." Nevertheless, she confirmed that she did not seek treatment from any type of doctor or counselor after the incident and suffered no physical ailments other than lack of desire for sexual intercourse with her husband for about a year following the incident.[4]

The trial court found that a lack of evidence precluded Laura's direct claim against Verdin. And, the direct claim having failed, it followed that John's derivative claim and their claims against the Practice also failed. Specifically, the trial court found the conduct was not extreme and outrageous, and Laura's distress did not rise to the level that no reasonable person could endure it.[5]

To survive summary judgment on a claim for IIED,

> a plaintiff must show all four of the following elements: (1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; and (4) The emotional distress must be severe.[6]

---

[3] According to Laura, the incident took place at approximately 11:30 a.m.

[4] John testified that while he observed Laura's decreased interest in sex and that she rejected his requests for sex approximately eight to ten times over the course of the year after the incident, the couple did engage in sexual relations as often as three to four times a month by March 2008.

[5] The trial court declined to decide the issue whether Verdin's conduct was "directed" at Laura. Because of our holding set forth herein, we also need not reach this question.

[6] (Citations and punctuation omitted.) *United Parcel Svc. v. Moore*, 238 Ga. App. 376, 377 (519 SE2d 15) (1999). See also *Jones v. Warner*, 301 Ga. App. 39, 43 (3) (686 SE2d 835) (2009)

"In the absence of any physical impact to her person, a plaintiff seeking to recover for emotional distress must show[, in addition to the above four elements,] that the conduct in question was directed at her."[7]

Conduct that is sufficiently extreme and outrageous is that which is "so serious as to *naturally* give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress."[8] It is not enough to show that the defendant

> acted with an intent which is tortious or even criminal, or that he . . . intended to inflict emotional distress, or even that his conduct [was] characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.[9]

"[T]he existence of a special relationship in which one person has control over another, as in [an] employer-employee relationship, may produce a character of outrageousness that might otherwise not exist."[10] "Regardless of the existence of such relationship, however, it must be emphasized that major outrage in the language or conduct complained of is essential to the tort."[11] "Whether reasonable persons could find the conduct reaches [the required] level is a question of law for the court."[12]

We cannot say as a matter of law that the asserted act of exposure and masturbating in a public hallway of a dentist's office where anyone could and did happen upon the person so engaged is not extreme and outrageous behavior.[13] Nevertheless, it is unneces-

---

("The law intervenes only where the distress inflicted is so severe that no reasonable person could be expected to endure it.") (punctuation omitted).

[7] *Norton v. Holcomb*, 299 Ga. App. 207, 210 (1) (682 SE2d 336) (2009) citing *Ryckeley v. Callaway*, 261 Ga. 828, 829 (412 SE2d 826) (1992).

[8] (Punctuation omitted; emphasis in original.) *United Parcel Svc.*, 238 Ga. App. at 377. See also *Norfolk Southern RR. Co. v. Spence*, 210 Ga. App. 284, 285 (435 SE2d 680) (1993).

[9] (Punctuation omitted.) *Johnson v. Allen*, 272 Ga. App. 861, 865 (2) (613 SE2d 657) (2005).

[10] (Citation omitted.) *Bridges v. Winn-Dixie Atlanta*, 176 Ga. App. 227, 230 (1) (335 SE2d 445) (1985).

[11] (Punctuation omitted.) *Wilcher v. Confederate Packaging*, 287 Ga. App. 451, 453 (2) (651 SE2d 790) (2007).

[12] *United Parcel Svc.*, 238 Ga. App. at 377.

[13] See *Trimble v. Circuit City Stores*, 220 Ga. App. 498, 499 (469 SE2d 776) (1996) ("The

sary to decide this issue; the Joneses' claims fail because Laura has not demonstrated that she has suffered severe emotional distress.

> Emotional distress includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is *extreme* that liability arises. The law intervenes only where the distress inflicted is so severe that no reasonable person could be expected to endure it.[14]

"Whether severe emotional distress can be found, based on the evidence presented, is a question for the court to decide."[15]

Laura testified that she was "shocked" and "upset for awhile," but she suffered no physical ailments other than decreased sexual desire for approximately one year following the incident. It is undisputed that after the incident Laura sought no treatment from any type of doctor, psychiatrist, psychologist, or counselor. According to John, Laura exhibited stress associated with their financial circumstances, stopped showing affection toward him, experienced "bursts of anger," and "wasn't the same person, just — not the outgoing person, not the social person that she used to be." While the

---

existence of a special relationship between the actor and victim, such as that of employer to employee, may make otherwise *non-egregious* conduct outrageous.") (emphasis supplied); *Mangrum v. Republic Indus.*, 260 FSupp.2d 1229, 1256 (III) (D) (N.D. Ga. 2003) (noting that supervisor's alleged exposure of his penis to an employee arguably constituted conduct extreme and outrageous enough to meet the Georgia standard for an IIED claim, though claim denied on other grounds); *Youngblood v. TCIM Svcs.*, No. 10-CV-0378-CVE-PJC (N.D. Okla. July 26, 2011) (finding an employee's allegation that her supervisor repeatedly exposed his genitals to her sufficient "to state the extreme and outrageous conduct element of a claim of [IIED]"). Compare *MARTA v. Mosley*, 280 Ga. App. 486, 491 (3) (634 SE2d 466) (2006) (physical precedent only) (plaintiff failed to set out a prima facie case on the element of outrageousness based on evidence that her work supervisor pulled her toward him, so that her backside was compressed against the front of his body, rubbed his hand along her side between her waist and underarm, squeezed her waist, moaned and then smiled; the defendant's conduct was an isolated instance that lasted two seconds, occurred in public and in the presence of other employees, and was not physically threatening); *Hendrix v. Phillips*, 207 Ga. App. 394, 394-395 (428 SE2d 91) (1993) (plaintiff failed to set out a prima facie case on the element of outrageousness based on evidence that her co-worker showed her a hole in the crotch of his pants and asked her if she would like to staple it closed and made other sexually offensive remarks and gestures).

[14] (Punctuation omitted; emphasis in original.) *Jones*, 301 Ga. App. at 42-43 (3) (anxiety, nervousness, sleeplessness, and irritability for one month following incident, coupled with failure to seek medical or psychiatric treatment for these symptoms, insufficient to show severe emotional distress). See also *Abdul-Malik v. AirTran Airways*, 297 Ga. App. 852, 858 (1) (678 SE2d 555) (2009) (sleeplessness and weight gain insufficient to establish severe emotional distress because plaintiff failed to seek professional help).

[15] *Abdul-Malik*, 297 Ga. App. at 858 (1).

frustration associated with feeling forced to quit one's job arising out of an incident such as the present one is understandable, under the facts presented here, Laura's distress does not rise to the level of severity necessary to sustain a claim for IIED.

Because John's claim for loss of consortium depends on the viability of Laura's IIED claim against Verdin, his claim against Verdin also fails. Likewise, the Joneses' claims for vicarious liability against the practice, which were based on Verdin's allegedly tortious conduct, also fail.[16]

*Judgment affirmed. Miller, P. J., concurs. Ellington, C. J., concurs in judgment only.*

DECIDED OCTOBER 21, 2011.

*Adam P. Taylor*, for appellants.

*Elarbee, Thompson, Sapp & Wilson, Justin B. Connell, Douglas J. Miller, Larry J. Overman II*, for appellees.

---

[16] See, e.g., *PN Express, Inc. v. Zegel*, 304 Ga. App. 672, 680 (5) (697 SE2d 226) (2010); *Everett v. Goodloe*, 268 Ga. App. 536, 546 (2) (c) (602 SE2d 284) (2004) (physical precedent only); *Hosp. Auth. of Calhoun County v. Walker*, 224 Ga. App. 163, 164 (2) (480 SE2d 849) (1996).