**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 22, 2025**

# In the Court of Appeals of Georgia

A25A1484. HALL et al. v. UMPIERREZ-MORLEY et al.

MARKLE, Judge.

Ian Hall and Morgan Thomas, a married couple, brought claims for intentional infliction of emotional distress and negligent infliction of emotional distress against Thomas's treating physician based on her use of allegedly extreme and outrageous terminology when consulting with them following the delivery of their stillborn baby.[1] They appeal from the trial court's grant of summary judgment to the physician, Denise Umpierrez-Morley, M.D., and her practice, Atlanta Women's Healthcare Specialists, LLC d/b/a Atlanta Obstetrics and Gynecology Associates (collectively, "Dr. Umpierrez"). For the reasons that follow, we affirm.

---

[1] They also alleged ordinary negligence, but withdrew that claim in response to Defendants' motion for summary judgment.

"A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Citation omitted.) *Brimar Enterprises v. Montgomery*, 373 Ga. App. 504, 510 (908 SE2d 767) (2024).

So viewed, the record shows that Thomas was five months pregnant when her obstetrician determined she was having complications and needed to go to the hospital. While there, Appellants were told that the pregnancy was no longer viable and, after consulting with Dr. Umpierrez, they decided to induce labor. Appellants told her and the staff repeatedly that they did not want to see the stillborn child, and they asked for a partition to obscure their view of the delivery.

Dr. Umpierrez administered Xanax to Thomas because she was distraught, and draped the lower portion of Thomas's body with a towel prior to the delivery. Because the baby was breech, and due to his size and fragility, the baby's head was severed at the neck during the delivery. Neither Appellant saw the body of their child during or following the delivery.

When Dr. Umpierrez met with the Appellants soon after the delivery, she told them that the baby had been "decapitated," and "his head came out in two pieces"

during delivery.[2] As a result of this description, both Hall and Thomas suffered emotional distress, including nightmares and anxiety attacks, and both required treatment from a therapist and a psychiatrist, and the administration of psychotropic drugs. Additionally, Thomas was diagnosed with post-traumatic stress disorder and depression.

Thereafter, Appellants brought the subject action against Dr. Umpierrez, alleging intentional infliction of emotional distress and negligent infliction of emotional distress. Dr. Umpierrez filed a motion for summary judgment, which the trial court granted. The trial court found that Appellants' claim for intentional infliction of emotional distress failed because Dr. Umpierrez's conduct, "while arguably insensitive, does not rise to the level of 'extreme and outrageous'" as a matter of law, and the physical impact rule barred their claim for negligent infliction of emotional distress. This appeal followed.

1. Appellants argue that the trial court erred in granting summary judgment on their claim for intentional infliction of emotional distress because, in determining that

---

[2] Dr. Umpierrez denies that she used the word "decapitated" when discussing the delivery with the couple. In the present posture, we view the record in the light most favorable to Appellants. *Brimar Enterprises*, 373 Ga. App. at 510.

Dr. Umpierrez's description of the delivery did not rise to the requisite level of "extreme and outrageous," it failed to consider the special relationship between the parties, Dr. Umpierrez's awareness of their particular susceptibility to distress, and the severity of the resulting harm. We disagree.

> Georgia has long recognized a cause of action for intentional infliction of emotional distress. However, the burden which the plaintiff must meet in order to prevail in this cause of action is a stringent one. To prevail, a plaintiff must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. The defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.

(Citation omitted.) *Mayorga v. Benton*, 364 Ga. App. 665, 670 (1) (875 SE2d 908) (2022).

> As we have explained,
>
> it has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a

4

degree of aggravation that would entitle the plaintiff to punitive damages for another tort. . . . Generally, the case is one which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

(Citations and punctuation omitted.) *Northside Hosp. v. Ruotanen*, 246 Ga. App. 433, 435 (541 SE2d 66) (2000).

In determining whether conduct rises to the requisite level of outrageousness and egregiousness, a trial court may consider

the existence of a relationship in which one person has control over another; the actor's awareness of the victim's particular susceptibility; and the severity of the resultant harm. Some claims have been found not to meet the threshold of outrageousness and egregiousness as a matter of law. Other cases in which reasonable persons could differ must be decided by a jury.

(Citations and punctuation omitted.) *Trimble v. Circuit City Stores*, 220 Ga. App. 498, 499-500 (469 SE2d 776) (1996). Dr. Umpierrez does not dispute the third factor — severity of the harm; thus, our analysis focuses on the remaining two factors.

(a) *Awareness of Appellants' particular susceptibility.*

Comment f, § 46 of the Restatement (Second) of Torts (1965) provides:

> The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know. It must be emphasized again, however, that major outrage is essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough.

See also *Bridges v. Winn-Dixie Atlanta*, 176 Ga. App. 227, 230 (1) (335 SE2d 445) (1985) (citing to Comment f, § 46 of the Restatement (Second)); *Williams v. Voljavec*, 202 Ga. App. 580, 581 (415 SE2d 31) (1992) (physical precedent only) ("A defendant's knowledge of a plaintiff's particular susceptibility to injury from emotional distress is often critical in weighing the extreme and outrageous character of conduct[.]"); *Mayorga*, 364 Ga. App. at 670 (1) (a).

Here, Appellants claim that the evidence establishes Dr. Umpierrez was fully aware of their fragile mental state because she observed Thomas's emotional distress prior to the procedure, had just prescribed Xanax to Thomas, and knew that Appellants were adamant that they did not wish to see the stillborn child after delivery. We agree that Dr. Umpierrez was or should have been aware of their

particular susceptibility to emotional distress given these circumstances. See *Mayorga*, 364 Ga. App. at 670 (1) (a); *Williams*, 202 Ga. App. at 581. Nevertheless, we conclude Dr. Umpierrez's choice of words in describing the delivery to Appellants, even when we acknowledge their particular susceptibility, does not rise to the requisite level of extreme and outrageous conduct as a matter of law.

Appellants rely on *McCoy v. Ga. Baptist Hosp.*, 167 Ga. App. 495 (306 SE2d 746) (1983), to raise a question of fact that the conduct here was extreme and outrageous in light of Appellants' peculiar susceptibility to harm. There, the parents of a stillborn child relinquished the body to the hospital for disposal because they could not afford the cost of a burial. *McCoy*, 167 Ga. App. at 496. A month later, a hospital employee, who was fully aware that the mother was suffering emotional issues, called the mother and told her the child's body was still stored in a freezer at the hospital and that "she should come and get it." Id. at 499 (2). We found that there was a question of fact as to whether the hospital's conduct constituted a reckless disregard of the consequences. Id.; *Roddy v. Tanner Med. Center*, 262 Ga. App. 202, 205 (585 SE2d 175) (2003). We explained,

> [t]o recover damages on account of physical injuries resulting from fright, where there is no actual immediate personal injury, it must appear

that . . . the defendant could or should have known that the act producing the injuries would with reasonable certainty cause such a result; *and it must appear that the injuries resulted from such gross carelessness, coupled with a knowledge of the probable physical results, as amounted to wilful and reckless disregard of consequences*[.]

(Citation and punctuation omitted; emphasis supplied.) *McCoy*, 167 Ga. App. at 499 (2).

But *McCoy*'s facts — in which "a hospital disregarded a mother's emotional health and *intentionally* called her to insist that she retrieve her stillborn baby" — are inapposite to the case before us, where the alleged bad act was carried out by a doctor in the course of explaining a recent medical procedure to a patient. (Emphasis supplied.) *Roddy*, 262 Ga. App. at 205. In other words, Appellants have not satisfied the first prong of the standard set forth in *McCoy* — that Dr. Umpierrez's description of the delivery amounted to "gross carelessness" on her part. 167 Ga. App. at 499 (2) ("[I]t must appear that the injuries resulted from such gross carelessness, *coupled with a knowledge of the probable physical results, as amounted to wilful and reckless disregard of consequences*[.]") (citation omitted; emphasis supplied); see also *Bridges*,

176 Ga. App. at 230 (1) (Regardless of a plaintiff's particular sensitivity to harm, "major outrage in the language or conduct complained of is essential to the tort.") (citation omitted).

Appellants' expert merely opined that Dr. Umpierrez's use of the word "decapitated" was not medically necessary and thus was not required by the general standard of care applicable to professionals in the field. Notably, this standard applies to professional *negligence* claims, not to intentional torts. See generally *Harvard v. John D. Archbold Memorial Hosp.*, 365 Ga. App. 171, 174 (877 SE2d 816) (2022) ("To state a claim for negligence, Harvard must show a breach of the standard of care that caused damages."); *DeKalb Med. Center v. Hawkins*, 288 Ga. App. 840, 843-844 (1) (655 SE2d 823) (2007) (discussing distinction between a claim for professional negligence and a claim for wrongful death — an intentional tort based on a reckless disregard of the consequences), disapproved on other grounds by *Harrison v. McAfee*, 338 Ga. App. 393, 402 (3) (788 SE2d 872) (2016); see also *Mableton Parkway CVS v. Salter*, 273 Ga. App. 477, 483 (2) (c) (615 SE2d 558) (2005) (a claim for intentional infliction of emotional distress based on negligent conduct cannot stand).

9

And, although Dr. Umpierrez's expert opined that she, herself, would not have used the term "decapitated" under the circumstances, she testified that it was entirely appropriate and medically necessary to fully disclose the facts of the delivery to Appellants. See *Harris v. Leader*, 231 Ga. App. 709, 712 (1) (b) (499 SE2d 374) (1998) ("Though [psychiatrist's] disclosure to [patient] that he had sexual fantasies about her may be facially troublesome to the average layman, considering the debate between members of the psychiatric community, it is not such a statement that would rise to the level of outrageousness," despite psychiatrist's awareness of patient's particular susceptibility to harm from emotional distress.) Thus, even assuming Dr. Umpierrez's full awareness of Appellants' peculiar susceptibility to emotional distress, at most, her choice of words was "insensitive or negligent . . . [T]here is nothing in the record to raise such conduct to the degree of wilfulness or wantonness that is necessary for a claim of intentional infliction of emotional distress." (Citations and punctuation omitted.) *Justice v. SCI Ga. Funeral Servs.*, 329 Ga. App. 635, 639 (4) (765 SE2d 778) (2014) (funeral home's failure to place cremated remains in funerial urn before delivery to family member did not amount to outrageous or extreme conduct); see also *Roddy*, 262 Ga. App. at 205 (nurses' failure to remove fetus from mother's pants

following miscarriage, which mother later found at home, did not amount to outrageous or extreme conduct); *Northside Hosp.*, 246 Ga. App. at 436 (morgue personnel's use of the term "the body" and hospital lawyer's "rude and insensitive" comments to deceased's daughter in refusing to release her father's body to her for disposal did "not rise to the level of outrageousness necessary to sustain a claim for intentional infliction of emotional distress"); compare *Williams*, 202 Ga. App. at 581 (question of fact as to whether physician's "conduct was so abrasive or obscene as to naturally humiliate, embarrass, frighten, or outrage the plaintiff" where he "relentlessly vented anger" against his cardiac patient, causing her physical condition to deteriorate).

(b) *Special relationship.*

Appellants contend that there is a question of fact as to whether Dr. Umpierrez's conduct was sufficiently outrageous because of the nature of the relationship between a physician and her patients. Indeed, "[t]he existence of a special relationship in which one person has control over another . . . may produce a character of outrageousness that might otherwise not exist. Regardless of the existence of such relationship, however, it must be emphasized that major outrage in the language or

conduct complained of is essential to the tort." (Citations and punctuation omitted.) *Jones v. Fayette Family Dental Care*, 312 Ga. App. 230, 232 (718 SE2d 88) (2011) (physical precedent only): see also *Bridges*, 176 Ga. App. at 230 (1).

Appellants cite to no authority that would require us to conclude there is a question of fact on this ground. *Jones* is inapposite because, there, we affirmed the trial court's grant of summary judgment based solely on the plaintiff's failure to demonstrate that she suffered severe distress. 312 Ga. App. at 232-233.

In *Greer v. Medders*, 176 Ga. App. 408 (336 SE2d 328) (1985), we reversed the trial court's grant of summary judgment to a physician on a claim for intentional infliction of emotional distress where, unlike the case at hand, the physician berated a hospital patient and his wife.

In *Wideman v. DeKalb County*, 200 Ga. App. 624 (409 SE2d 537) (1991), rev'd on other grounds in *DeKalb County v. Wideman*, 262 Ga. 210 (416 SE2d 498) (1992), a mother alleged her mistreatment by emergency medical technicians and their refusal to take her to the hospital where her treating physician was waiting — instead, taking her to a closer hospital — resulted in her miscarriage. Id. at 624-627. We reversed the trial court's grant of the EMTs' motion for judgment n.o.v. on a claim for intentional

infliction of emotional distress. Id. at 628 (1) (a). Demonstrating the stark contrast between the facts of *Wideman* and the case at hand, there, we concluded "the jury was authorized to find that the EMTs willfully violated the county policy concerning the patient's choice of hospital and deliberately disregarded appellant's repeated requests, [and] that they fabricated an alleged emergency to justify their actions[.]" Id.

As set forth above, the record simply does not support Appellants' claim that Dr. Umpierrez's description of the delivery amounted to extreme and outrageous behavior, even considering the special relationship between a physician and her patient. See *Jones*, 312 Ga. App. at 232; *Bridges*, 176 Ga. App. at 230 (1).

2. Appellants contend the trial court erred by concluding their claim for negligent infliction of emotional distress was barred by the impact rule. We disagree.

To state a claim for negligent infliction of emotional distress, in the absence of a pecuniary loss, plaintiffs must show they suffered a physical injury as a result of a physical impact. *Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 584 (I) (533 SE2d 82) (2000) ("In a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be

a physical injury.") (citation and punctuation omitted); *Contour Sierra v. Williams*, 370 Ga. App. 74, 84 (4) (a) (894 SE2d 127) (2023).

> The current Georgia impact rule has three elements: (1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress. . . . A plaintiff's failure to meet any one of the three requirements of the impact rule will preclude recovery.

(Citations and punctuation omitted.) *Malibu Boats v. Batchelder*, 347 Ga. App. 742, 744-745 (1) (819 SE2d 315) (2018); see also *Contour Sierra*, 370 Ga. App. at 84 (4) (a).

One of the policy rationales for this restriction on the ability to recover for negligently inflicted emotional distress is "that absent impact, there will be a flood of litigation of claims for emotional distress." *Lee*, 272 Ga. 583 at 587 (II). And, "[a]lthough the physical impact rule sometimes produces harsh results, it provides a brighter line of liability and a clear relationship between the plaintiff's being a victim of the breach of duty and compensability to the plaintiff[.]" (Citations and punctuation omitted.) *Coon v. Med. Center*, 300 Ga. 722, 734 (4) (797 SE2d 828) (2017); *Lee*, 272 Ga. at 587 (II).

Importantly,

the Supreme Court of Georgia has recognized only a single, carefully circumscribed exception to the physical impact rule, authorizing recovery of damages by a parent where the parent and her child both suffered a physical impact that caused them both physical injuries, even if the parent's emotional distress arose not only from her physical injury but also from watching her child suffer and die.

(Citation omitted.) *Malibu Boats*, 347 Ga. App. at 748 (3); see also *Lee*, 272 Ga. at 588 (III).

Here, Appellants allege that Dr. Umpierrez's negligent description of the delivery caused them emotional distress. Their claim thus fails to satisfy any of the three elements of the impact rule, as there was no physical impact from the allegedly tortious act.[3] See *Contour Sierra*, 370 Ga. App. at 84 (4) (a); *Malibu Boats*, 347 Ga. App. at 744-745 (1). Moreover, the single recognized exception to the rule does not apply to the facts of this case, as both Appellants testified that they did not see the

---

[3] Appellants contend Thomas was physically impacted because she was medically induced to deliver the baby, but this argument is misguided. The alleged negligent conduct did not occur when Thomas was induced, or even during the delivery. Additionally — even if we were to accept this position — it would necessarily preclude Hall's recovery on this claim.

child's body.[4] *See Malibu Boats*, 347 Ga. App. at 748 (3); see also *Lee*, 272 Ga. at 588 (III).

To the extent Appellants contend that crafting a new exception to the impact rule would not undermine the policy reasons for the impact rule, we are not persuaded. Because of the nature of the medical profession, physicians and other care providers routinely convey distressing information to patients and their family members. We thus have serious concerns that extending the exception to the facts of this case would, indeed, "open the floodgates" to similar suits. See *Lee*, 272 Ga. at 587 (II). Additionally, there is a distinct possibility that subjecting medical professionals to liability under circumstances such as these would have a chilling effect on their capacity to discuss medical issues with their patients.

---

[4] Appellants contend that *Lee*, in which our Supreme Court recognized the exception set forth above, "stands for the proposition that the impact rule is not ironclad, but instead can be superseded with factual scenarios[.]" 272 Ga. at 588 (III). They read *Lee* too broadly. See *Coon*, 300 Ga. at 734, 734-735 (4) (noting that "*Lee* did recognize a single, carefully circumscribed exception to the physical impact rule," and declining to craft another exception to the rule based on the facts of the subject case). Moreover, their reliance on *Bruscato v. O'Brien*, 307 Ga. App. 452, 458 (1) (705 SE2d 275) (2010), is misplaced, as that case holds the impact rule is inapplicable to claims for medical malpractice — and there is no such claim in the present case.

As set forth above, the trial court did not err in granting Dr. Umpierrez's motion for summary judgment.

*Judgment affirmed. Doyle, P. J., and Padgett, J., concur.*